IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs December 7, 2011

**STATE OF TENNESSEE v. TIMOTHY DAMON CARTER**

**Appeal from the Criminal Court for Davidson County**
**No. 2008-D-3734     Seth Norman, Judge**

**No. M2010-02248-CCA-R3-CD - Filed June 18, 2012**

The Defendant, Timothy Damon Carter, pled guilty to two counts of aggravated burglary, a Class C felony, and three counts of theft of property valued at $1,000 or more but less than $10,000, a Class D felony. See Tenn. Code Ann. §§ 39-14-103, -105(3), -403. The trial court sentenced the Defendant as a Range III, persistent offender to an effective eight-year sentence to be served in confinement. In this appeal as of right, the Defendant contends (1) that the trial court erred by denying his motion to withdraw his guilty plea; and (2) that the trial court erred by ordering his sentence to be served in confinement. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court are Affirmed.**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Dwight E. Scott, Nashville, Tennessee, for the appellant, Timothy Damon Carter.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Victor S. Johnson, District Attorney General; and J.W. Hupp, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

*I. Guilty Plea Hearing*

The Defendant was indicted for two counts of aggravated burglary, four counts of theft of property valued at $1,000 or more but less than $10,000, and one count of theft of property valued at more than $500 but less than $1,000. The Defendant entered into a plea agreement with the State in which he agreed to plead guilty to two counts of aggravated burglary and three counts of theft of property valued at $1,000 or more but less than $10,000. The State agreed to dismiss the two remaining counts. Pursuant to the plea agreement, the Defendant would receive an eight-year sentence as a Range III, persistent offender on all counts[1] with the sentences to run concurrently. The manner of service was to be determined by the trial court following a sentencing hearing.

On July 26, 2010, the trial court held a plea submission hearing for this matter. The plea submission hearing was conducted with other defendants, with individual colloquies as to each individual's offense. The Defendant stated under oath that he was competent to enter a plea and that he was not under the influence of "any type of drug or narcotic." The Defendant also stated that he understood his rights as explained by the trial court and that he was satisfied with his counsel's representation. The Defendant further stated that he understood the charges and "the possible penalties" that he faced. The Defendant was asked to review his "petition to enter plea of guilty." After reviewing the document, the Defendant stated that he had signed the document "freely and voluntarily." When asked by the trial court, the Defendant admitted that "before he signed [the petition], [] [he had] plenty of time to go over it with [counsel]" and that he thought he understood the petition. The petition contained the following statement:

> 10. My attorney has discussed with me whether I am eligible for alternative sentencing, including probation. I understand my attorney's statements on this issue. Although, if eligible, I hope to receive probation or other alternative sentencing, I agree to accept any punishment which the law permits the Court to impose.

At the plea submission hearing, the State presented the following factual basis for the Defendant's plea:

> This case is based on several instances . . . . Basically, [] [C]ount I . . . occurred on July 31st here in Davidson County. The [D]efendant was observed breaking into the apartment of Barbie Kirk. Later there [were] items of hers recovered from [the Defendant's] girlfriend's apartment and/or his car.

---

[1] The eight-year sentences for the aggravated burglary counts were agreed lower-than-range sentences pursuant to Hicks v. State, 945 S.W.2d 706 (Tenn. 1997).

-2-

Also, there was a theft of a jewelry box and jewelry of a Sandy Jo McCormick on, approximately, August 6th, 2008, as well as electronic equipment from Thomas Hensey on August 6th, 2008. Also items recovered from a theft from Free Will Baptist College, some computer equipment, also [were] recovered on August 6th, 2008.

And, finally, somewhere between August 4th and 6th, the residence of Carl Rucker was broken into here in Davidson County, various items were taken and also some of those items were recovered.

After outlining the details of the plea agreement, the prosecutor stated that "[w]e will do a sentencing hearing to determine the matter of sentencing." The Defendant stated that he heard the facts as stated by the prosecutor and that they were "basically true and correct." The trial court then asked the Defendant if he understood what he was pleading to and the Defendant stated that he did. The trial court accepted the Defendant's pleas and stated that the Defendant would be sentenced to eight years on each count as a Range III offender with the sentences to run concurrently, for a total effective sentence of eight years. The trial court "set the matter for a further sentencing hearing" to be held on September 8, 2010.

*II. Motion to Withdraw Guilty Plea Hearing*

On August 6, 2010, the Defendant was arrested on new charges of three counts of "felony theft" and one count of "felony possession of a handgun." On August 18, 2010, the State filed a motion to "revoke, increase, or alter bail" as a result of these new charges. The Defendant failed to appear at the sentencing hearing scheduled for September 8, 2010. On September 13, 2010, the Defendant filed a motion to withdrawal his guilty plea arguing that "the plea was entered through a misunderstanding as to its effect" and that "there was no meeting of the minds." The trial court held a hearing on both motions on September 16, 2010.

At the hearing, the Defendant testified that he wanted to withdraw his guilty plea because he thought he "was going to receive, like, eight years probation," but instead it was going to be "up to the judge, like, in the sentencing hearing, so [he] would rather take [his] chances at trial." The Defendant reviewed his petition to enter a guilty plea and admitted that it stated that he was going to have a sentencing hearing and that counsel had discussed that with him. However, the Defendant insisted that trial counsel had told him he would "receive, like, eight years [c]ommunity [c]orrections" prior to entering his guilty plea. The Defendant testified that trial counsel had only recently informed him "that the DA never stated that [he] was going to receive probation, that there was going to be a sentencing hearing." The Defendant thought that there "might have been a misunderstanding that [he] didn't hear."

When asked by trial counsel if he did not understand that he was going to have a sentencing hearing, the Defendant responded as follows:

> I understood that I was going to have a sentencing hearing, but I'm thinking at the sentencing hearing - - like, I was going to receive probation and later on it was going to be up to the judge to decide if I'm going to receive probation or send me to the penitentiary.

On cross-examination, the Defendant admitted that he had "an extensive criminal history," but he insisted that he "didn't think [he] could go to prison" based upon the charges he pled guilty to.

With respect to the State's motion to revoke, increase, or alter bail, the Defendant testified that he missed his scheduled sentencing hearing because he "didn't get any notice from [his] bonding company." The Defendant admitted that he had "picked up some new charges" since he entered his plea. The Defendant testified that he had "a theft charge and possession of a handgun" charge pending. The Defendant further testified that he was employed full-time by "TGC Automotive" and that he had "a small business going on called You Call, We Haul," where he hauled "garbage for people." The Defendant denied that trial counsel had previously discussed the State's motion to revoke his bail. The Defendant told the trial court that "I didn't know that the DA had filed this motion because my attorney never did let me know that this motion was going to be heard today" and the Defendant insisted that trial counsel told him that he had "just received the motion from the DA" that day.

The trial court stated that it did not believe that the Defendant failed to understand the terms of his plea agreement because the trial court had "asked him if he understood that under oath and he told [it], [y]es." The trial court further stated as follows:

> It is a little strange to me . . . that [the Defendant] comes in here and enters a plea of guilty, and after that he goes and gets new charges, and then the State comes along to increase his bond, and low and behold, all of a sudden, he wants to set aside his guilty plea.

Without further elaboration, the trial court denied both the Defendant's motion to withdraw his guilty plea and the State's motion to revoke, increase, or alter the Defendant's bail.

*III. Sentencing Hearing*

-4-

On September 29, 2010, the trial court held a sentencing hearing in this matter. At the hearing, Detective Mark Webb[2] of the Metropolitan Nashville Police Department testified that he was assigned to investigate a series of thefts and burglaries in July and August 2008. Detective Webb testified that he recovered the property that had been stolen from the victims after a search of the Defendant's vehicle and the apartment where the Defendant was arrested. Detective Webb further testified that he also recovered property that he felt "quiet certain [was] stolen," but he did not know "who it belong[ed] to." Detective Webb also testified that while the Defendant was awaiting sentencing in this case, he had "recently been arrested for [felony] theft of property charges."

Scentra Williams testified on behalf of the Defendant. Ms. Williams testified that she had been dating the Defendant for "nine months to a year." Ms. Williams testified that if the Defendant was granted probation, she would assist him in meeting the terms of his probation. Ms. Williams testified that she did not think that the Defendant "deserved" to go to prison. Ms. Williams stated that she felt the Defendant was "a good guy" and that "he just was around the wrong people at the wrong time . . . when he did this crime." Ms. Williams insisted that the Defendant had changed because he was "now . . . a Christian" and he knew that "what [he had] done in the past [was] wrong and he [had] accepted that." However, Ms. Williams had no answer when asked why the Defendant had been arrested on new felony theft charges if he had actually changed his behavior.

The Defendant's mother, Martha Carter, also testified on behalf of the Defendant at the sentencing hearing. Ms. Carter testified that the Defendant lived with her and had for "most of his life." Ms. Carter testified that the Defendant could continue to live with her if he was placed on probation. Ms. Carter stated that she would be willing to report the Defendant if he violated any of the terms and conditions of his release. Ms. Carter testified that she could not assist the Defendant "in getting to and from his probation officer's office" because she did not drive, "but the bus goes wherever."

Ms. Carter also testified that she was aware that the Defendant had "several convictions on his record" and that he had "violated his probation in the past." However, Ms. Carter testified that she believed the Defendant would follow the terms and conditions of probation this time because the Defendant was "listening more" and she was "talk[ing] to him a lot." Ms. Carter explained that she tried "to tell [her] kids . . . the right things to do" and the Defendant was "really listening" to her. Ms. Carter further explained that the Defendant "just [did] a lot . . . more than he did at first like things around the house . . . and

---

[2]The State also introduced the Defendant's presentence report into evidence, but the Defendant failed to include the report in the appellate record.

he[] got a job" so she believed that he had "changed because he [had] been around in the house most of the time."

The Defendant admitted that he pled guilty to charges of aggravated robbery and theft of property and that he "fully accept[ed] responsibility for those crimes." The Defendant also admitted that he had "quite an extensive criminal history" and had "been convicted of several crimes in the past." The Defendant further admitted that he had previously violated the terms of his probation. However, the Defendant insisted that there were "a lot of things that [had] changed in [his] life" and that he was "staying to [himself], not being out in the streets committing crimes." The Defendant stated the following to the trial court:

> I know I done did wrong in the things that I did to the victims . . . and I'm extremely sorry. Yes, I did do them crimes, and I only ask the judge to forgive me for the crimes that I did . . . . I am just really trying to change my life around.

The Defendant also admitted that he "just recently caught another charge because [he] bought some stolen property from a friend."

The Defendant testified that if he were placed on probation he would "keep doing the right things" and that he was "trying to stay out of trouble." The Defendant told the trial court that he would "do the rules and regulations of probation." The Defendant testified that he had only violated his probation in the past because he "was addicted to drugs" and that he had "never violated [his] probation because of another charge, it was always like drugs, drugs, drugs." The Defendant stated that he had not used cocaine in "two or three years" and that he had been "trying to do the right things in life and provide for [his] family." The Defendant also complained that his "speech [was] not really up to par to be talking because [he] didn't make it more than the 10th grade, and most of the time [he] [had] been in and out of jail, in and out of jail, in and out of jail." The Defendant concluded by asking the trial court to place him on probation, but he testified, "If he is going to send me to the penitentiary, then that is something I got to do."

The trial court stated that the Defendant's criminal record began in 1991 with multiple sentences for aggravated burglary. The Defendant also received two ten-year sentences for aggravated robbery in 1995, a parole revocation in 1999, a six-year sentence for theft of property in 2003, a six-year sentence for aggravated assault and a one-year sentence for possession of a weapon in 2004, and sustained probation violations in 2006, 2007, and 2008. The trial court concluded as follows:

Well, I don't find anywhere in this record that [the Defendant] has done anything to rehabilitate himself. It is just like the State says, it is the same course of conduct since 1991 and it continues. I tried to total up the number of years that he had been sentenced to during that period of time without including these that he's pled to today and I quit at about 50 years. I just couldn't total anymore because I couldn't figure it all out.

It is the judgment of [t]he [c]ourt that he be sentenced to the Department of Correction[] for a period of eight years, as [a] Range III offender, at 45 percent.

## ANALYSIS

### I. Motion to Withdraw Guilty Plea

The Defendant contends that the trial court erred by denying his motion to withdraw his guilty plea. The Defendant argues that there "is nothing in the record to point to a finding by the trial court that there was no 'fair and just reason' for the Defendant to withdraw his plea."[3] The Defendant also argues that the trial court "made no findings of fact and conclusions of law" on this issue. The State concedes that the trial court failed to use the multi-factor analysis approved by our supreme court in State v. Phelps, 329 S.W.3d 436 (Tenn. 2010), to address this issue. However, the State responds that because Phelps was decided several months after the hearing on this matter the trial court did not err. The State further responds that even applying the multi-factor analysis adopted in Phelps, the trial court did not abuse its discretion in denying the Defendant's motion to withdraw his plea.

Appellate courts review a trial court's decision on a motion to withdraw a guilty plea for an abuse of discretion. Phelps, 329 S.W.3d at 443 (citing State v. Crowe, 168 S.W.3d 731, 740 (Tenn. 2005)). An abuse of discretion occurs when a trial court "applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." Id. (citing State v. Jordan, 325 S.W.3d 1, 38-40 (Tenn. 2010)).

Tennessee Rule of Criminal Procedure 32(f) states as follows:

---

[3]In both his motion before the trial court and in his brief on appeal, the Defendant argued that he had to show that withdrawal of his guilty plea was necessary to correct a "manifest injustice." However, because the Defendant sought to withdraw his guilty plea prior to sentencing, this was not the correct standard for the trial court to use. See Tenn. R. Crim. P. 32(f)(1).

**Withdrawal of Guilty Plea.**

(1) *Before Sentence Imposed*.  Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for <u>any fair and just reason</u>.

(2) *After Sentence But Before Judgment Final*.  After sentence is imposed but before judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice.

(emphasis added).  However, under Rule 32(f) "a criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing." <u>Phelps</u>, 329 S.W.3d at 444 (citing <u>Crowe</u>, 168 S.W.3d at 740).  The burden is on the defendant to establish sufficient grounds for the withdrawal of the guilty plea.  <u>Id.</u>  With that in mind, the trial court "should always exercise [its] discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of [a] crime may have a fair and impartial trial."  <u>Id.</u> (quoting <u>Henning v. State</u>, 201 S.W.2d 669, 671 (Tenn. 1947)).

Because the Defendant here sought to withdraw his guilty plea prior to sentencing, the trial court should have determined whether "any fair and just reason" in support of the withdrawal existed.  In <u>Phelps</u>, our supreme court held that "the federal courts' non-exclusive multi-factor approach is the correct one for a trial court to follow in assessing whether to grant a pre-sentencing motion to withdraw a guilty plea."  329 S.W.3d at 447.  Our supreme court cited with approval the following list of factors used by the United States Sixth Circuit Court of Appeals:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

<u>Id.</u> at 446 (quoting <u>United States v. Haygood</u>, 549 F.3d 1049, 1052 (6th Cir. 2008)).  No single factor is dispositive and "the relevance of each factor varies according to the circumstances surrounding both the plea and the motion to withdraw."  <u>Id.</u>  Additionally, "a trial court need not consider the seventh factor unless and until the defendant establishes a

fair and just reason for permitting withdrawal." Id. at 446-47 (citing United States v. Ellis, 470 F.3d 275, 286 (6th Cir. 2006)).

In Phelps, the supreme court noted that this court had "identified the correct approach to determining what constitutes a 'fair and just reason.'" 329 S.W.3d at 447. For several years prior to the Phelps decision, this court had utilized a list of five factors which contained "no substantive difference" from the list of factors used by the Sixth Circuit to determine what constituted a "fair and just reason" for withdrawal of a guilty plea. Id. at 447 n.11. However, the supreme court disagreed with this court's "repeated pronouncements that a trial court may not set a guilty plea aside [prior to sentencing] . . . merely because the defendant experiences a change of heart." Id. (quotation marks omitted). Our supreme court explained that "the purpose of the 'any fair and just reason' standard 'is to allow a hastily entered plea made with unsure heart and confused mind to be undone.'" Id. at 448 (quoting United States v. Alexander, 948 F.2d 1002, 1004 (6th Cir. 1991)). As such, our supreme court held that "where a trial court applies the correct non-exclusive multi-factor analysis and determines that the balance of factors weighs in the defendant's favor, the trial court should allow the defendant to withdraw his plea, even if the defendant's reason could be characterized as a 'change of heart.'" Id. Our supreme court also cautioned "that a defendant should not be allowed to pervert this process into a tactical tool for purposes of delay or [any] other improper purpose." Id.

It is clear from the record before us that "the trial court made no attempt to apply the factors to the proof before it." Phelps, 329 S.W.3d at 448. Despite this, the State argues that the trial court did not err because it "did not have the benefit of the guidance in Phelps, which was decided four months after the [D]efendant's motion to set aside his plea was heard." However, as our supreme court noted in Phelps, this court "had adopted the Sixth Circuit's multi-factor test for pre-sentencing motions to withdraw guilty pleas many years before this matter came before the trial court." Id. As such, we conclude that the trial court erred by "failing to conduct the relevant analysis" in its decision to deny the Defendant's motion to withdraw his guilty plea. Id. However, because the record before us contains all of the information before the trial court when it made its decision regarding the motion to withdraw the guilty plea, we will conduct the appropriate analysis to determine whether there was "any fair and just reason" for the Defendant to withdraw his guilty plea. See id. at 448-49 (concluding that the trial court abused its discretion by failing to conduct the proper analysis and then conducting the analysis because the record "reveal[ed] proof which [was] relevant to at least some of the several factors that should have been considered by the trial court").

With respect to the amount of time that elapsed between the plea and the motion to withdraw it, the Defendant pled guilty on July 26, 2010. The Defendant did not file his motion to withdraw his plea until seven weeks later on September 13, 2010. Seven weeks

"is a significant length of time." Phelps, 329 S.W.3d at 449. Therefore, the first factor weighs against the Defendant. With respect to the Defendant's reason for failing to move for withdrawal earlier, the Defendant was never asked why he had not sought to withdraw his plea earlier. The Defendant only testified that he was under the assumption he would receive probation until he "talked to [defense counsel] in person." There is no evidence when this meeting occurred or if it was at this meeting that the Defendant instructed his counsel to file the motion to withdraw his plea. As such, we conclude that the second factor is inconclusive. See id. (concluding the same under similar facts).

The next factor examines whether the Defendant has asserted or maintained his innocence. Unlike the defendant in Phelps, at no point in this case has the Defendant asserted his innocence regarding the charges he pled guilty to. See 329 S.W.3d at 449-50. At the plea submission hearing, the Defendant admitted his guilt and agreed with the facts of the case as presented by the State. The Defendant reviewed his "petition to enter plea of guilty" and stated that he understood the document, that he had reviewed the document with his counsel, and that he had signed the document freely and voluntarily. At the hearing on the Defendant's motion to withdraw his guilty plea, the Defendant never asserted his innocence. Instead, he argued that he had "misunderstood" what trial counsel had told him about the manner of service for his sentence. At the sentencing hearing, the Defendant repeatedly admitted his guilt for the crimes he had pled guilty to. At no point in the record did the Defendant assert his innocence or make "ambiguous statements" about his guilt. See id. at 450. Therefore, we conclude that this factor weighs against the Defendant.

The next factor addresses the circumstances underlying the entry of the guilty plea. The Defendant was represented by counsel prior to and during his plea. The Defendant's plea was part of a group guilty plea. While our supreme court has cautioned trial courts against the use of group guilty pleas, such a plea is in "substantial compliance" with constitutional and procedural requirements. See Phelps, 329 S.W.3d at 451 n.16. Unlike the defendant in Phelps, the Defendant here never expressed any confusion or frustration about the guilty plea proceedings. See id. at 450-51. The Defendant stated under oath that he was competent to enter a guilty plea; that he understood the charges against him, the possible penalties, and his rights; and that he was satisfied with his counsel's representation. The Defendant also stated under oath that he had reviewed his "petition to enter plea of guilty" with counsel and that he understood the document. That document specifically stated that the Defendant had discussed the issue of alternative sentencing with his counsel, that he understood counsel's "statements on this issue," and that he agreed to accept "any punishment which the law" permitted the trial court to impose. Additionally, the prosecutor concluded his recitation of the facts by stating that there would be a sentencing hearing to determine "the matter of sentencing." After this statement, the trial court asked the Defendant if he understood what he was pleading to and the Defendant stated that he did.

-10-

Furthermore, the Defendant did not file his motion to withdraw his guilty plea until after he was arrested on additional charges and failed to appear for his original sentencing hearing. Based on the foregoing, we conclude that this factor weighs against the Defendant.

With respect to the Defendant's nature and background, we note that the Defendant stated at his sentencing hearing that he "didn't make it more than the 10th grade." However, the Defendant testified that he was employed full-time and that he was able to establish his own side business on the weekends. At the sentencing hearing, the Defendant admitted to being addicted to cocaine, but he testified that he had not used drugs in over two years. At the plea submission hearing, the Defendant stated that he was not under the influence of "any type of drug or narcotic." There being no evidence to the contrary, we conclude that the Defendant was capable of understanding a proper plea colloquy and that this factor weighs against the Defendant. With respect to the Defendant's prior experience with the criminal justice system, we note that the Defendant admitted that he had a lengthy criminal record. Based upon the record before us, the Defendant has had extensive experience with the criminal justice system dating back to 1991 and including several prior convictions and probation revocations. As such, this factor also weighs against the Defendant. Because none of the factors we have examined weigh in favor of the Defendant, we will not examine the last factor regarding prejudice to the State.

In addition to the factors examined above, we agree with the trial court's assessment of the Defendant's motion to withdraw his guilty plea. As the trial court stated it "is a little strange" that the Defendant would enter "a plea of guilty, and after that he goes and gets new charges, and then the State comes along to increase his bond, and low and behold, all of a sudden, he wants to set aside his guilty plea." Given these circumstances it appears that the Defendant's motion to withdraw his guilty plea was designed "to pervert this process into a tactical tool for purposes of delay or [some] other improper purpose." Phelps, 329 S.W.3d at 448. Based upon our review of the record and the relevant factors outlined in Phelps, we conclude that the Defendant failed to establish a fair and just reason for withdrawing his guilty plea.

## II. Denial of Alternative Sentencing

The Defendant contends that the trial court erred by denying him an alternative sentence, specifically probation. The Defendant argues that he should have been granted an alternative sentence because he "expressed remorse, was eligible for probation, [and] exhibited a sincere desire to reform himself and become a law-abiding citizen." The State responds that the "trial court did not abuse its discretion in ordering the [D]efendant to serve his sentence in prison" because the Defendant had a long history of criminal conduct and

"measures less restrictive than confinement had been frequently and recently applied to the [D]efendant without any evidence of success."

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, on appeal the burden is on the Defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991); see also State v. Carter, 254 S.W.3d 335 (Tenn. 2008).

The Defendant was eligible for probation because the "sentence actually imposed upon [him was] ten (10) years or less." Tenn. Code Ann. § 40-35-303(a). Thus, the trial court was required to automatically consider probation as a sentencing option. Tenn. Code Ann. § 40-35-303(b). However, no criminal defendant is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). The defendant has the burden of establishing his or her suitability for full probation. See State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). The defendant must demonstrate that probation will "subserve the ends of justice and the best interests of both the public and the defendant." Hooper v. State, 297 S.W.2d 78, 81 (Tenn. 1956), overruled on other grounds, State v. Hooper, 29 S.W.3d 1, 9-10 (Tenn. 2000). Additionally, the Defendant was not considered to be a favorable candidate for alternative sentencing under the Sentencing Act because he was classified as a Range III offender. Tenn. Code Ann. § 40-35-102(6) (limiting the consideration as a favorable candidate for alternative sentencing to especially mitigated or standard offenders convicted of Class C, D, or E felonies and "in the absence of evidence to the contrary").

In determining any defendant's suitability for alternative sentencing, the trial court should consider whether

(A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;

(B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or

(C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant[.]

Tenn. Code Ann. § 40-35-103(1)(A)-(C). A trial court should also consider a defendant's potential or lack of potential for rehabilitation when determining if an alternative sentence would be appropriate. Tenn. Code. Ann. § 40-35-103(5); Boston, 938 S.W.2d 435 at 438. Ultimately, in sentencing a defendant, a trial court should impose a sentence that is "no greater than that deserved for the offense committed" and is "the least severe measure necessary to achieve the purposes for which the sentence is imposed." Tenn. Code Ann. § 40-35-103(2), (4).

We conclude that the trial court did not err in ordering the Defendant to serve his sentence in confinement. To begin, we note that the Defendant was not initially considered to be a favorable candidate for alternative sentencing because he was a Range III, persistent offender. Furthermore, the record reflects that the Defendant had a lengthy criminal history dating back to 1991. The trial court stated that the Defendant had numerous felony convictions, including multiple convictions for aggravated burglary and aggravated robbery. The Defendant admitted that his criminal history was extensive. Accordingly, there was sufficient evidence for the trial court to conclude that confinement was "necessary to protect society by restraining a defendant who has a long history of criminal conduct." See Tenn. Code Ann. § 40-35-103(1)(A). Additionally, the trial court stated that the Defendant had committed one parole violation and three probation violations, with the most recent being in 2008. The Defendant admitted that he had violated the terms and conditions of his probation in the past. Therefore, measures less restrictive than confinement had been frequently and recently applied to the Defendant without success. Accordingly, we conclude that this issue is without merit and affirm the judgments of the trial court.

CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE

-13-