RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0442p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

No. 05-6551

BERNARD H. ELLIS, JR.,

*Defendant-Appellant.*

>

Appeal from the United States District Court
for the Middle District of Tennessee at Columbia.
No. 03-00009—William J. Haynes, Jr., District Judge.

Argued: October 31, 2006

Decided and Filed: November 29, 2006

Before: CLAY and SUTTON, Circuit Judges; SHARP, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Peter J. Strianse, TUNE, ENTREKIN & WHITE, Nashville, Tennessee, for Appellant.
Jimmie Lynn Ramsaur, ASSISTANT UNITED STATES ATTORNEY, Nashville, Tennessee, for
Appellee. **ON BRIEF:** Peter J. Strianse, TUNE, ENTREKIN & WHITE, Nashville, Tennessee,
for Appellant. Jimmie Lynn Ramsaur, ASSISTANT UNITED STATES ATTORNEY, Nashville,
Tennessee, for Appellee.

_____

**OPINION**

_____

CLAY, Circuit Judge. Defendant, Bernard H. Ellis, Jr., appeals the district court's denial
of a motion to withdraw his guilty plea. Defendant was convicted of manufacturing and possessing
with intent to manufacture in excess of one hundred marijuana plants, in violation of 21 U.S.C.
§ 841(a)(1), pursuant to a guilty plea, on November 12, 2003, and sentenced on September 16, 2005,
to a probation term of four years with a special condition of confinement in a community corrections
center for eighteen months. For the following reasons, we **AFFIRM** the district court's decision.

_____

[*]The Honorable Allen Sharp, United States District Judge for the Northern District of Indiana, sitting by
designation.

## BACKGROUND

Defendant is a public health epidemiologist.[1]  He has worked on a myriad of public health projects with numerous entities, including the National Cancer Institute and the Centers for Disease Control, and as a consultant for approximately one hundred major tribal, state, federal governmental and private organizations.

Defendant cultivated and processed marijuana in a small plot on his one hundred eighty-seven acre property, located at 5985 Fly Hollow Road, Santa Fe, Maury County, Tennessee ("farm").  On August 28, 2002, the Governor's Task Force on Marijuana Eradication conducted a search of Defendant's farm and discovered the marijuana cultivation.  Defendant was charged with manufacturing and possessing with intent to manufacture in excess of one hundred marijuana plants, in violation of 21 U.S.C. § 841(a)(1), in a one count felony information filed on August 19, 2003.  On February 3, 2003, the government filed a complaint for forfeiture against Defendant's farm in a parallel civil *in rem* action.  *See United States v. 5985 Fly Hollow Road, et al.*, No. 03 Civ. 0015 (M.D. Tenn.).  Defendant waived his right to a grand jury indictment.

Defendant reported to the district court that, on his farm, he was "work[ing] toward[s] a pick your own berries operation with blackberries, blueberries and raspberries." (J.A. 215)  He "grew [marijuana] in a number of small patches around the farm, but the total square footage would not have added up to a great deal" because only "a 16th of an acre or less" was used for growing marijuana. (J.A. 215)  Defendant had cultivated marijuana for "14 to 15 years at the time of the raid" but had never sold marijuana. (J.A. 221)  He maintains that he grew marijuana for medicinal purposes:[2]

| | |
|---|---|
| Q. | . . . . Why were you growing marijuana, Mr. Ellis? |
| A. | I'm growing it for my own medicinal use and to provide to, at the time of raid, three other people. |
| Q. | And what were you doing with the marijuana? |
| A. | Again, both drawing and drying, processing it myself, and at the time providing it to two people who were in the last stages of cancer, and one person who was a late stage HIV patient. |
| . . . | |
| Q. | Any other categories of people that you have provided this marijuana to? |
| A. | . . . . I have also provided to a person with [chronic obstructive pulmonary disease], and I think on two occasions people with other conditions, multiple sclerosis, there was another I think severe asthma patient who used it orally or drank it as a tea. |

(J.A. 215-17)  He reported that some of the people to whom he provided marijuana "were using it with their physicians' awareness." (J.A. 231)  He personally used marijuana for medicinal purposes

---

[1]Defendant holds a Bachelor of Arts from Vanderbilt University, a Master of Arts in sociology from the University of Texas at Austin, and a Master of Public Health from the University of California at Berkeley.

[2]Defendant informed the district court that he "[in] the early to mid-70s . . . became aware [of the medical benefits of marijuana] through the literature.  Then while [he] was an official of the National Cancer Institute, NCI at the time was doing medical trials with marijuana." (J.A. 220)  He has "followed the issue since that time," and "stayed abreast of [government and foundation reports] and . . . worked with a few states in their efforts to establish state level medical marijuana." (J.A. 220)

because he suffered from "problems associated with fibromyalgia," (J.A. 59-60), and "degenerative joint disease in his hips and spine." (J.A. 255) For its part, the government maintained that the "argument that [Defendant] was producing [marijuana] purely for medicinal purposes is belied by the amount of marijuana that he was growing." (J.A. 239) Indeed, Defendant's marijuana cultivation appears to have been expanding:

> Q.     I think you also indicated . . . that when you initially started growing marijuana, that it was a fairly small operation, with 25 or 30 plants each year?
> A.     Correct.
> Q.     And that this operation had progressed over the years; is that correct?
> A.     That I had over that year grown more than was usual and the year before had grown more than I usually grew. So for those two years I had grown more than was usual.
> Q.     I think the year before, you had grown approximately 125 plants; is that correct?
> A.     I said close to a hundred. I thought I said under a hundred.
> Q.     And this year there were 300 plants that were taken by the officers when they came to your property; is that right?
> A.     That's the number that the laboratory has provided us. We haven't seen the plants, but that's the number we've been working with.

(J.A. 227-28) The government affirms that two bags of marijuana, scales, three rifles and two other firearms, which Defendant claimed were used for hunting, target practice and personal protection, and $12,500 in cash, which he claimed to have saved over a two year period, were seized during the search of the farm.

Although the government avers that Defendant was growing a "substantial amount of marijuana," (J.A. 239), the exact amount of marijuana seized from the farm is unclear. It appears that the government reported several different marijuana plant counts and weights. An initial report indicated that five hundred thirty-seven marijuana plants were seized from the farm. The government amended this submission to clarify that "[a] total of 300 marijuana plants were taken from the farm." (J.A. 76, 174) Later, the government indicated that four hundred marijuana plants were seized. The plant weight is similarly unclear and dropped from one hundred twenty-seven pounds to thirty-seven pounds. Excluding unusable parts of the plant like root balls, dirt, stems and stalks, Defendant estimated that the usable plant weight "was between seven and eight pounds." (J.A. 211-12)

On August 12, 2003, the parties signed a plea agreement. In pertinent part, the plea agreement provides that:

> 2.     The defendant will enter a plea of guilty to Court One of the information and will agree to the Forfeiture Count. Count One will charge a violation of 21 U.S.C. § 841(a)(1) of manufacturing in excess of 100 marijuana plants. The parties agree that the total number of marijuana plants is 300 and that their weight is a total of 37 pounds or 16.8 kilograms. The government will take no position on whether the guns seized during the execution of the consensual search had any relationship to the manufacturing of the marijuana. **The forfeiture count will seek the forfeiture of $212,500 cash.**

. . .
12.     The defendant agrees to the criminal, civil and administrative forfeiture of any and all funds, proceeds or assets that have been acquired in whole or in part from funds received, generated, derived from, or used in furtherance of criminal activity. **Such forfeiture shall include $212,500.00 cash to be paid to the government prior to the date of the sentencing.**
13.     The defendant agrees to forfeit the guns seized during the execution of the consensual search of his property. The parties agree that no further action is necessary to accomplish the forfeiture of these guns.

. . .
23.     No additional promises, agreements or conditions have been entered into other than those set forth in this letter and none will be entered into unless in writing and signed by all.

(J.A. 20-23) (emphasis added). In the second paragraph, the plea agreement expressly stipulates a cash forfeiture. However, subsequent broader language implies that the government may seek the forfeiture of other "funds, proceeds or assets." *Id.* The plea agreement does not specifically reference Defendant's farm. On November 12, 2003, the Court held a hearing at which Defendant entered a guilty plea.

By letter dated December 16, 2003, the government provided Defendant with a proposed decree of forfeiture. In the proposed decree, the government agrees to "accept $212,500 in settlement of the civil forfeiture case and will provide the release of *Lis Pendens* upon receipt of $200,000." (J.A. 82) In pertinent part, the government's proposed forfeiture decree provides that:

1.      Bernard H. Ellis, Jr., agrees to pay the United States Two Hundred Twelve Thousand Five Hundred ($212,500.00) in settlement of this case. The $212,500.00 shall be comprised of the following:
  a.    $12,500.00 that was seized from the defendant property on August 28, 2002, by the Governor's Task Force on Marijuana Eradication.
  b.    A cashier's check or money order made payable to the United States Marshals Service Asset Forfeiture Fund in the amount of $200,000.00.
2.      . . . . Failure to submit aforementioned check or money order by [February 6, 2004] will result in the nullification of this Order.

. . .
4.      Upon payment and in consideration for the . . . settlement, plaintiff United States of America shall furnish a release of the *Lis Pendens* recorded in the Maury County Register of Deeds Office against the defendant property. The United States will provide the release of *Lis Pendens* upon receipt of the $200,000.00, and claimant Ellis shall be responsible for the recording of the release of *Lis Pendens*.

(J.A. 87) Defendant did not execute the proposed forfeiture decree.

After entering the guilty plea, Defendant could not come up with the money he agreed to forfeit under the plea agreement. On May 21, 2004, more than six months after entering the guilty plea, Defendant filed a motion to withdraw his plea arguing that he simply could not produce the cash forfeiture. On August 20, 2004, the district court held an evidentiary hearing on the motion. On February 18, 2005, the district court denied the motion "absent corroborative evidence of the defendant's financial limitations." (J.A. 114)

On February 28, 2005, Defendant provided the district court with supplemental information regarding his financial status. Defendant argued that, after entering his guilty plea, his cousin, who was supposed to loan him the forfeiture money, told him that he would not be able to do so. Defendant submitted several affidavits from family members indicating that they could not provide a loan. On September 7, 2005, the district court ruled that the "supplemental affidavits [were] insufficient to set aside the defendant's plea" and directed that the case proceed to sentencing. (J.A. 150)

On September 12, 2005, the district court held a sentencing hearing. Defendant was sentenced to a probation term of four years with a special condition of confinement in a community corrections center for eighteen months. Moreover, since nothing in the plea agreement indicated that the forfeiture provision was contingent upon Defendant being able to obtain a loan in order to pay the cash forfeiture, the government indicated that it would seek forfeiture of Defendant's farm via the pending parallel civil *in rem* forfeiture action.

Defendant appeals the denial of his motion to withdraw his guilty plea. He contends that he "was not aware that the farm itself was at risk for being lost," (J.A. 221), because the plea agreement did not contain any language permitting the government to take the farm if he did not come up with the money. For its part, the government contends that Defendant knowingly, intelligently and voluntarily entered the plea, and has failed to demonstrate a fair and just reason for withdrawing his guilty plea.

## DISCUSSION

### I.        Standard of Review

This Court reviews a district court's denial of a motion to withdraw a guilty plea for abuse of discretion. *United States v. Denkins*, 367 F.3d 537, 544 n.3 (6th Cir. 2004); *United States v. Mader*, 251 F.3d 1099, 1105 (6th Cir. 2001); *United States v. Pluta*, 144 F.3d 968, 973 (6th Cir. 1998). Abuse of discretion results when the district court relies on clearly erroneous findings of fact, improperly applies the law or uses an erroneous legal standard. *United States v. Heavrin*, 330 F.3d 723, 727 (6th Cir. 2003). This Court may also find an abuse of discretion if the district court "committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." *United States v. Schreane*, 331 F.3d 548, 564 (6th Cir. 2003) (quotation and citation omitted).

### II.        Defendant's Motion to Withdraw the Guilty Plea

"A plea bargain . . . is contractual in nature and subject to contract-law standards." *United States v. Mandell*, 905 F.2d 970, 973 (6th Cir. 1990) (quotation and citation omitted); *United States v. Herrera*, 928 F.2d 769, 771 (6th Cir. 1991). A defendant does not have an absolute right to withdraw a guilty plea and bears the burden of proving that he is entitled to withdraw his guilty plea. *Mader*, 251 F.3d at 1105; *United States v. Bazzi*, 94 F.3d 1025, 1027 (6th Cir. 1996). "When a defendant has entered a knowing and voluntary plea of guilty at a hearing at which he acknowledged committing the crime, the occasion for setting aside a guilty plea should seldom arise." *United States v. Morrison*, 967 F.2d 264, 268 (8th Cir. 1992) (quotation and citation omitted). The

"withdrawal of a guilty plea is inherently in derogation of the public interest in finality and the orderly administration of justice." *United States v. Horne*, 987 F.2d 833, 837 (D.C. Cir. 1993).

A defendant may withdraw a guilty plea "after the court accepts the plea, but before it imposes sentence if . . . the defendant can show a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B). This rule is designed "to allow a hastily entered plea made with unsure heart and confused mind to be undone, not to allow a defendant to make a tactical decision to enter a plea, wait several weeks, and then obtain a withdrawal if he believes he made a bad choice in pleading guilty." *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (quotation and citation omitted); *United States v. Bashara*, 27 F.3d 1174, 1181 (6th Cir. 1994); *Pluta*, 144 F.3d at 973. Withdrawal of a plea is appropriate where there is a real confusion or misunderstanding of the terms of the agreement. *See, e.g., Mandell*, 905 F.2d at 973; *United States v. Wells*, 211 F.3d 988, 995 (6th Cir. 2000).

This Court considers a number of factors to determine whether Defendant meets the burden of proving that the withdrawal of his guilty plea is for a fair and just reason, including:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Bashara*, 27 F.3d at 1181; *Pluta*, 144 F.3d at 973. "The factors listed are a general, non-exclusive list and no one factor is controlling." *Bazzi*, 94 F.3d at 1027. In the instant case, the application of these factors demonstrates that the district court did not abuse its discretion and supports an affirmance of the district court's denial of the motion to withdraw the guilty plea. Each factor will be discussed in turn.

**1.        The Amount of Time that Elapsed Between the Guilty Plea and the Motion to Withdraw the Plea**

The first factor the Court considers to determine whether Defendant's motion to withdraw the guilty plea is for a fair and just reason, is the amount of time that elapsed between the guilty plea and the motion to withdraw the plea. *Bashara*, 27 F.3d at 1181. "The shorter the delay, the more likely a motion to withdraw will be granted, and a defendant's reasons for filing such a motion will be more closely scrutinized when he has delayed his motion for a substantial length of time." *United States v. Baez*, 87 F.3d 805, 808 (6th Cir. 1996). In the instant case, the government extended a plea offer to Defendant on August 12, 2003. Defendant did not enter a guilty plea until November 12, 2003. Defendant therefore had three months to consider the plea offer and to decide whether he would enter into the plea agreement. On May 21, 2004, more than six months after he entered the guilty plea, Defendant filed a motion to withdraw the plea.

This Court has denied motions to withdraw guilty pleas where the amount of time that elapsed between the guilty plea and the motion to withdraw the plea was shorter than six months. *See, e.g., Pluta*, 144 F.3d at 973 (four month delay); *United States v. Valdez*, 362 F.3d 903, 912 (6th Cir. 2004) ("unjustified 75-day delay, alone, supported the court's denial of a motion to withdraw"); *United States v. Durham*, 178 F.3d 796, 798-99 (6th Cir. 1999) ("The strongest factor supporting the district court's denial of Durham's motion is the length of time between Durham's plea and the filing of his motion to withdraw. Durham waited approximately seventy-seven days to file his motion after entering his guilty plea."); *Baez*, 87 F.3d at 808 (sixty-seven day delay); *United States*

*v. Goldberg*, 862 F.2d 101, 104 (6th Cir. 1988) (fifty-five day delay); *United States v. Spencer*, 836 F.2d 236, 239 (6th Cir. 1987) (five week delay). In the instant case, the Court finds that the prolonged delay weighs heavily against Defendant and supports an affirmance of the district court's denial of the motion.

### 2.        The Presence of a Valid Reason for Failing to Move for Withdrawal Earlier

The second factor the Court considers to determine whether Defendant's motion to withdraw is for a fair and just reason is the presence of a valid reason for the failing to move for withdrawal earlier in the proceedings. *Bashara*, 27 F.3d at 1181. Defendant argues that the motion to withdraw should have been granted because (A) it was impossible for him to perform his part of the plea agreement; (B) the provisions of the plea agreement are ambiguous; and (C) the plea agreement's purpose was frustrated. For its part, the government contends that Defendant entered into the plea agreement knowingly, intelligently, voluntarily and with the advice of competent counsel.

### A.        Impossibility of Performance

Defendant argues that impossibility of performance should discharge the plea agreement. He contends that it became impossible for him to perform his part of the agreement because his family could not lend him money to satisfy the cash forfeiture. He maintains that he filed the withdrawal motion as soon as he learned that he was not able to borrow the money. However, none of the affidavits Defendant filed indicate any dates on which he tried to obtain loans or dates on which his family members refused to loan the money.

A contract may be discharged by impossibility,

> [w]here, after a contract is made, a party's performance is made impracticable without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his duty to render that performance is discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 261. Impossibility may discharge a contract when an unanticipated or unforeseeable event renders performance impossible or impracticable. *Karl Wendt Farm Equip. Co. v. Int'l Harvester Co.*, 931 F.2d 1112, 1116-17 (6th Cir. 1991); *Seaboard Lumber Co. v. United States*, 308 F.3d 1283, 1295 (Fed. Cir. 2002). A defense of impossibility is not allowed where the supervening event might have been foreseen or anticipated. Defendant was aware that he did not have sufficient funds to pay the cash forfeiture and assumed the risk that he would not be able to borrow the money. If Defendant had intended that he not be required to forfeit the farm if he was not able to obtain a loan, he should have insisted that the agreement include such a provision. The plea agreement was simply not contingent on Defendant's ability to procure funds. The Court finds, therefore, that Defendant's impossibility claim is meritless.

### B.        Ambiguity in the Terms of the Plea Agreement

Under the plea agreement, Defendant was required to pay the government a cash forfeiture. In pertinent part, the agreement provides:

> 2.        The defendant will enter a plea of guilty to Court One of the information and will agree to the Forfeiture Count. Count One will charge a violation of 21 U.S.C. § 841(a)(1) of manufacturing in excess of 100 marijuana plants. The parties agree that the total number of marijuana plants is 300 and that their weight is a total of 37 pounds or 16.8 kilograms. The

> government will take no position on whether the guns seized
> during the execution of the consensual search had any
> relationship to the manufacturing of the marijuana. **The
> forfeiture count will seek the forfeiture of $212,500 cash.**

(J.A. 20) (emphasis added). Defendant argues that the cash forfeiture is the sole forfeiture sought by the government under the plea agreement. He maintains that the express language of the agreement raises an objectively reasonable belief that the scope of the forfeiture is limited to cash. He avers that the substitute forfeiture of the farm was never contemplated by the parties, and contends that the government cannot seek the forfeiture of the farm because the agreement does not authorize a substitute forfeiture in the event of his inability to pay the required sum.

Defendant argues that his understanding of the plea agreement is further confirmed by the government's proposed forfeiture decree which provides for the release of the government's lien on the farm. Defendant's reliance on the proposed forfeiture decree is misplaced. In pertinent part, the government's proposed forfeiture decree provides that:

> 2.    Failure to submit aforementioned check or money order by
>        [February 6, 2004] will result in the nullification of this
>        Order.
>
> . . .
> 4.    Upon payment and in consideration for the . . . settlement,
>        plaintiff United States of America shall furnish a release of
>        the *Lis Pendens* recorded in the Maury County Register of
>        Deeds Office against the defendant property. The United
>        States will provide the release of *Lis Pendens* upon receipt of
>        the $200,000.00, and claimant Ellis shall be responsible for
>        the recording of the release of *Lis Pendens*.

(J.A. 87) The express language of the government's proposed forfeiture decree stipulates that payment of the cash forfeiture is required before the government releases the lien on the farm. The farm was simply not going to be released until the government received Defendant's cash payment. The government's proposed forfeiture decree supports a finding that the government may proceed with the forfeiture of the farm if Defendant fails to make the required cash payment. It simply does not support Defendant's interpretation of the plea agreement.

Defendant also argues that the plea agreement is ambiguous because the narrow language in the second clause of the agreement, concerning the cash forfeiture, conflicts with broader language providing that:

> 12.   **The defendant agrees to the criminal, civil and
>        administrative forfeiture of any and all funds, proceeds or
>        assets** that have been acquired in whole or in part from funds
>        received, generated, derived from, or used in furtherance of
>        criminal activity. **Such forfeiture shall include $212,500.00
>        cash** to be paid to the government prior to the date of the
>        sentencing.

(J.A. 21) (emphasis added). Defendant argues that the second and twelfth clauses are conflicting and should be construed against the government because the "expectation [is] that the government draft plea agreements with particular care and precision." *Carnine v. United States*, 974 F.2d 924, 928 (7th Cir. 1992). However, the plea agreement is not ambiguous because the second and twelfth clauses are not conflicting. The twelfth clause stipulates that the "forfeiture shall include

$212,500.00 cash," and implies that other "funds, proceeds or assets" may be subject to forfeiture. (J.A. 21)  Instead of contradicting the second clause, the twelfth clause appears to complement the earlier, narrower language.  The twelfth clause suggests that other funds, proceeds or assets may be subject to forfeiture.

Moreover, from the outset, Defendant was aware that the government would proceed to pursue forfeiture of the farm because a parallel civil *in rem* action was instituted.  *See United States v. 5985 Fly Hollow Road, et al.*, No. 03 Civ. 0015 (M.D. Tenn.).  Defendant negotiated and agreed to pay a cash payment in lieu of forfeiture of the farm.  It is reasonable for Defendant to expect that the government would proceed to seek forfeiture of the farm when he failed to make the required payment.

Defendant entered into the plea agreement knowingly, intelligently and voluntarily and with the advice of competent counsel.  "[A] defendant who breaches a plea agreement forfeits any right to its enforcement."  *Wells*, 211 F.3d at 995 (citing *United States v. Skidmore*, 998 F.2d 372, 275-76 (6th Cir. 1993)).  The "failure to fulfill the terms of a pretrial agreement relieves the government of its reciprocal obligations under the agreement."  *United States v. Verrusio*, 803 F.2d 885, 888 (7th Cir. 1986) (citing *United States v. Calebrese*, 645 F.2d 1379, 1390 (10th Cir. 1981)).  The failure to pay the cash forfeiture amounts to a breach of the plea agreement and relieves the government of any responsibility under the breached agreement.  The government is therefore free to seek the forfeiture of Defendant's property in the parallel civil *in rem* action.

### C.          Frustration of Purpose

Defendant argues that the principal reason for accepting the plea agreement was the cash forfeiture and the government's willingness to forego forfeiture of the farm.  Although not clearly articulated in the brief, Defendant appears to be raising a frustration of purpose claim as a basis for withdrawing from the plea agreement.  Under this theory,

> [w]here, after a contract is made, a party's principal purpose is substantially frustrated without his fault by the occurrence of an event the non-occurrence of which was a basic assumption on which the contract was made, his remaining duties to render performance are discharged, unless the language or the circumstances indicate the contrary.

Restatement (Second) of Contracts § 265; *Karl Wendt Farm Equip. Co.*, 931 F.2d at 1119.  Frustration of purpose serves as a defense to a breach of contract claim only when the principal purpose of the contract has been frustrated.  *Id.* at 1119; *Seaboard Lumber Co.*, 308 F.3d at 1296.  "It is not enough that [Defendant] had in mind a specific object without which he would not have made the contract.  The object must be so completely the basis of the contract that, as both parties understand, without it the transaction would make little sense."  *Karl Wendt Farm Equip. Co.*, 931 F.2d at 1119 (quotation and citation omitted).  For its part, the government contends that it did not consider Defendant's ability to keep his property as the fundamental basis for the agreement.  In the instant case, the record does not indicate that the plea agreement existed solely for the purpose of allowing Defendant to keep the farm.  The Court finds, therefore, that Defendant's frustration of purpose claim is meritless.

### 3.          Defendant Does Not Assert His Innocence

The third factor the Court considers to determine whether Defendant's motion to withdraw the guilty plea is for a fair and just reason is whether the defendant has asserted or maintained his innocence.  *Bashara*, 27 F.3d at 1181; *Pluta*, 144 F.3d at 974.  In the instant case, Defendant does

not assert his innocence and has repeatedly acknowledged his guilt. This factor, therefore, supports an affirmance of the district court's denial of the motion to withdraw the plea.

### 4. Circumstances Surrounding Defendant's Entry of the Guilty Plea

To determine whether Defendant's motion to withdraw the guilty plea is for a fair and just reason the Court considers the circumstances underlying the entry of the guilty plea. *Bashara*, 27 F.3d at 1181. The district court properly advised Defendant of his constitutional rights at the plea hearing. Defendant clearly articulated that he was entering the guilty plea knowingly and voluntarily. He indicated that he benefitted from the assistance of competent counsel and affirmed that he was satisfied with his lawyer's representation. The record indicates that Defendant understood what he was doing and the constitutional rights he was waiving when he entered the guilty plea. The circumstances surrounding the entry of the guilty plea, therefore, support an affirmance of the district court's denial of the motion to withdraw the plea.

### 5. Defendant's Nature and Background

The fifth factor the Court considers to determine whether Defendant's motion to withdraw the guilty plea is for a fair and just reason is Defendant's nature and background. *Bashara*, 27 F.3d at 1181. Defendant is a highly educated and sophisticated party. In the instant case, the record indicates that Defendant understood what he was doing when he entered the guilty plea. Defendant's background, therefore, also supports an affirmance of the district court's denial of the motion to withdraw the plea.

### 6. Defendant's Prior Experience with the Criminal Justice System

The sixth factor the Court considers to determine whether Defendant's motion to withdraw the guilty plea is for a fair and just reason is the degree to which Defendant has had prior experience with the criminal justice system. *Bashara*, 27 F.3d at 1181; *Pluta*, 144 F.3d at 974. Defendant does not have extensive experience with the criminal justice system.[3] Admittedly, this factor does not support an affirmance of the district court's decision. However, it is important to note that a favorable finding with respect to this factor cannot weigh heavily in Defendant's favor because "[t]he factors listed are a general, non-exclusive list and no one factor is controlling." *Bazzi*, 94 F.3d at 1027.

### 7. Potential Prejudice to the Government

Finally, the last factor the Court considers to determine whether Defendant's motion to withdraw the guilty plea is for a fair and just reason is the potential prejudice to the government if the motion to withdraw is granted. *Bashara*, 27 F.3d at 1181. In the instant case, the government has not set forth any arguments concerning prejudice because "the government is not required to establish prejudice that would result from a plea withdrawal, unless and until the defendant advances and establishes a fair and just reason for allowing the withdrawal." *Spencer*, 836 F.2d at 240. In the instant case, the Court finds that the government does not need to establish prejudice because Defendant has failed to establish a fair and just reason for withdrawing his guilty plea.

---

[3]On September 15, 2000, Defendant was charged with possession of drug paraphernalia in state court. He pled guilty to this charge on November 6, 2000. This offense is minor and Defendant has no other offense in his criminal history record.

**CONCLUSION**

The district court did not abuse its discretion in denying Defendant's motion to withdraw the guilty plea.  For the foregoing reasons, we **AFFIRM** the district court's decision.