# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT Nashville
### Assigned on Briefs March 12, 2014

## STATE OF TENNESSEE v. MITCHELL NATHANIEL SCOTT

**Appeal from the Criminal Court for Davidson County**
**No. 2011B1498      Seth W. Norman, Judge**

**No. M2013-01169-CCA-R3-CD -Filed April 25, 2014**

The defendant, Mitchell Nathaniel Scott, entered a plea of guilty to one count of aggravated child abuse. Prior to a sentencing hearing, the defendant filed a motion to withdraw his guilty plea, which the trial court denied. On appeal, the defendant contends that the trial court erred in denying his motion because he provided sufficient evidence to demonstrate a "fair and just reason" that would justify the withdrawal of his guilty plea. After a review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the Court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Kelly David Young, Nashville, Tennessee, for the appellant, Mitchell Nathaniel Scott.

Robert E. Cooper, Jr., Attorney General and Reporter; Ahmed A. Safeeullah, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Brian K. Holmgren, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant was indicted on two counts of aggravated child abuse, a Class A felony, and two counts of aggravated child neglect, a Class A felony. On January 28, 2013, the defendant entered an open plea of guilty as to Count 1 of the indictment, and Counts 2-4 were dismissed.

At the guilty plea hearing on March 12, 2013, the defendant testified that he was not suffering from any mental illness nor was he under the influence of any type of drug or narcotic. He understood his right to have either a jury or a bench trial, and his right to require

to State to prove his guilt beyond a reasonable doubt. He understood that the charges in Counts 1 and 2 of the indictment carried a possible penalty of fifteen to sixty years for each count and that the charges in Counts 3 and 4 also carried a possible sentence of fifteen to sixty years for each count. After looking at the petition to enter a plea of guilty the defendant confirmed his signature on the document and that it was given freely and voluntarily. He agreed that he had a sufficient amount of time to discuss the plea with counsel and that he understood the plea. He acknowledged that the jury was "in the hall right now ready to go to trial" and that he was waiving his right to a trial and subsequent appeal.

When asked by the court to present a statement of proof, the State related the following:

> [The defendant] is the father of [the victim] whose date of birth is 1/25/2008, thus making him three years of age at the time of this offense which occurred on March 6, 2011.
>
> [The defendant] was car[ing] for his son at a residence here in Nashville, Davi[d]son County, which was his cousin's residence. At some point during the day, in the late afternoon or early evening, his son, [the victim], soiled and urinated in his pants and [the defendant] then took off his child's clothes and placed this child in a tub and scalded his son with hot water on his back, buttocks, and leg.
>
> [The defendant] called the child's mother, and the child's mother came home from work. The child was transported to Vanderbilt Hospital where he was diagnosed with second degree burns to those areas of his body. [The defendant] made statements to a medical doctor by the name of Dr. Green, who was the care-team consultant, claiming that he had left the child unattended in the water and the child had accidentally gotten burned while the water was running in the bathtub while he was retrieving clothes for the child. [The defendant] later made those same statements to a detective in the early morning hours that day when they went back to the scene to investigate.
>
> Approximately a month later [the defendant] made subsequent statements to the same effect to the detective, and then in a second interview conducted on that day changed his story and admitted that he had been angry that day because of being left with seven children, including his son, that day and that he engaged in the behavior in causing the burns, but rather than leaving his son unattended had placed his son under streaming water and was attempting to rub off the feces while giving the child a bath.
>
> Those would be the facts that we would have presented to the jury, and our medical evidence would have also shown that the child, based on the water temperature which

reached a maximum of 132 degrees, would have had to have been underneath the water for at least 10 to 20 seconds to cause these injuries.

The defendant agreed that he heard the remarks of the State and understood that they constituted what the State would attempt to prove if the defendant went to trial. He confirmed that he had discussed these facts with his counsel and that after these discussions he determined that it would be in his best interest to enter a plea in this matter. The defendant then pleaded guilty to aggravated child abuse as charged in Count 1, and the trial court found that there was a factual basis for the plea and that it was voluntarily entered. The defendant's petition to enter a plea of guilty stated that he wished to plead guilty to one count of aggravated child abuse, a Class A felony, with the length and manner of the sentence to be determined at a sentencing hearing. Both the petition and judgment sheet stated that the defendant entered the plea in his best interest.

Approximately one month later the defendant filed a motion to withdraw his guilty plea pursuant to Rule 32(f)(1) of the Tennessee Rules of Criminal Procedure. He stated that the "fair and just reason" for withdrawing his plea was that "he was concerned and preoccupied with worry about his mother's illness and coming surgery and therefore was not making the decision to forego his jury trial and plead guilty knowingly and voluntarily." The trial court then scheduled a hearing for the motion to withdraw the guilty plea.

At the hearing, the defendant testified that he informed counsel that he wished to withdraw his guilty plea a week after the guilty plea hearing. He stated that he wished to withdraw the plea because when he wanted to plead guilty he was thinking more about his mother and the fact that "she was in surgery facing life or death situations and I was just stressed out thinking more about her than myself." The defendant testified that once he returned to his cell, he realized "that ain't no good deal" and then asked counsel to file his motion to withdraw his plea. Counsel spoke with the defendant "a few times" and then filed the motion thirty days after the defendant first pleaded guilty. The defendant stated that he visited his mother on a furlough and that she "had died three times in the hospital but they resuscitated her."

On cross-examination the defendant testified that his case had been pending for twenty-two months and that during that time period he had considered whether to proceed to trial or attempt to negotiate a plea agreement. He confirmed that he met with trial counsel several times in the months and weeks leading up to his trial date prior to his mother falling ill. The defendant stated that he never communicated to either his lawyer or the court that he was not of sound mind due to concern about his mother's illness. He agreed that "it was basically in [his] lap as to whether or not [he] was going to let anybody know that these things were impeding [his] ability to be -- to make rational decisions including whether to

have a trial, whether to testify, or whether to plead."

The defendant clarified that his earlier statement of "that ain't no good deal" meant that he believed "he could have went to trial and got something better" than his plea agreement. He stated that he fully understood when he entered his plea that he could be convicted of either the indicted offenses or lesser-included offenses and that nothing changed in the week after his plea "to make that issue any greater or less." He further agreed that he knew that he was entering an open guilty plea and that the judge would determine his sentence, and he realized that the minimum sentence he would receive was a fifteen-year sentence that would be served at one hundred percent.

The defendant stated that his mother had been sick "two or three weeks" before he entered his plea and that at the time of the hearing she was still hospitalized. He testified that he was still concerned for his mother's welfare.

The trial court issued an order denying the defendant's motion to withdraw his guilty plea after considering the factors set forth in *State v. Phelps*, 329 S.W.3d 436 (Tenn. 2010). The court found that the defendant informed his attorney of his desire to withdraw the plea a week after agreeing to it but that the motion was not filed until thirty days after the guilty plea with no reason asserted for the delay. The court also found that there was no proof as to whether the defendant ever asserted or maintained his innocence and that nothing unusual occurred when the agreement was entered into before the trial court. The defendant affirmed that he understood the specifics of the plea agreement and that he entered into it voluntarily and freely. The court credited the statement of the defendant that he determined that the agreement was not a "good deal" and that he was interested in withdrawing the plea. The court also found that the defendant completed the eleventh grade of high school and suffered from no mental deficiencies. The court relied on the pre-sentence report when it found that the defendant had an extensive criminal history and experience with the court system. The court noted that the defendant "claims that the state of his mother's health affected his decision to plead guilty, but then admits that he basically just wants a better plea offer." The trial court found that the defendant did not provide sufficient justification to facilitate the withdrawal of his guilty plea.

## ANALYSIS

The defendant argues that the trial court erred in denying his motion to withdraw a guilty plea. Specifically, he contends that his mother's illness was sufficient evidence to demonstrate "a fair and just reason" for withdrawing his plea.

We review a trial court's decision regarding a motion to withdraw a guilty plea under

an abuse of discretion standard. *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005). This court will not reverse the trial court unless it "clearly appears that there was an abuse of discretion." *Id.* A trial court abuses its discretion only "when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of proof, or applies reasoning that causes injustice to the complaining party." *Phelps*, 329 S.W.3d at 443 (citing *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010)).

Tennessee Rule of Criminal Procedure 32(f) provides that a trial court may grant a motion to withdraw a guilty plea "for any fair and just reason." However, this rule does not provide the defendant with "a unilateral right to later withdraw his plea either before or after sentencing." *Phelps*, 329 S.W.3d at 444. When refusing to set aside a guilty plea "the trial judge should always exercise his discretion with caution . . . to the end that one accused of a crime may have a fair and impartial trial." *Henning v. State*, 201 S.W.2d 669, 671 (1947). It is the burden of the defendant to establish "sufficient grounds for withdrawing his plea." *Id.*

When a defendant seeks to withdraw a guilty plea prior to a sentencing hearing the court must determine whether "any fair and just reason" exists to support the withdrawal of the plea. *Phelps*, 329 S.W.3d at 445. Relying on persuasive federal authority, our supreme court held in *Phelps* "that the federal courts' non-exclusive multi-factor approach is the correct one for a trial court to follow in assessing whether to grant a pre-sentencing motion to withdraw a guilty plea." *Id.* at 447. The supreme court cited seven factors from the United States Court of Appeals for the Sixth Circuit that a trial court should utilize:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* at 446 (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)). The court went on to state that "no single factor is dispositive; and . . . the relevance of each factor varies according to the circumstances surrounding both the plea and the motion to withdraw." *Id.* Trial courts "need not consider the seventh factor unless and until the defendant establishes a fair and just reason for permitting withdrawal." *Id.* at 446-47 (citing *United States v. Ellis*, 470 F.3d 275, 286 (6th Cir. 2006)).

The *Phelps* court also held that a "change of heart" may be sufficient to justify the

withdrawal of a guilty plea. The court explained that "the purpose of the 'any fair and just reason' standard 'is to allow a hastily entered plea made with *unsure heart and confused mind* to be undone.'" *Id.* at 448 (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (emphasis added)). The court held that "where a trial court applies the correct non-exclusive multi-factor analysis and determines that the balance of factors weighs in the defendant's favor, the trial court should allow the defendant to withdraw his plea, even if the defendant's reasons could be characterized as a 'change of heart.'" *Id.* at 448. The court cautioned that "a defendant should not be allowed to pervert this process into a tactical tool for purposes of delay or other improper purpose." *Id.*

In this case, the trial court applied the *Phelps* factors and found that the defendant was not entitled to withdraw his guilty plea. The defendant contends that a number of the factors do weigh in his favor and thus the trial court abused its discretion in denying his motion.

The first factor looks at the period of time that has elapsed between the plea and the motion to withdraw it. The defendant testified that he desired to withdraw his plea immediately after returning to his cell and that he informed counsel of his desire a week later. However, the motion to withdraw the plea was not filed until a month after the plea had been approved by the trial court. Because the elapsed period of time was only one month, the first factor is inconclusive. *Compare State v. Marcus E. Robinson*, No. M2005-00670-CCA-R3-CD, 2006 WL 1097456, at *3, *5 n.5 (Tenn. Crim. App. Apr. 5, 2006) *perm. app. denied* (Tenn. Oct. 2, 2006) (noting that in an instance where the defendant pled guilty in February 2003 and filed motion to withdraw in March of 2003 that the length of time was "of no consequence . . . as it was neither a particularly short nor particularly long period of time"), *with Phelps*, 329 S.W.3d at 449 (finding that period of seven weeks between guilty plea and motion to withdraw was "a significant length of time"), *and State v. Kevin Glenn Tipton*, No. E2012–00038–CCA–R3CD, 2013 WL 1619430, at *12 (Tenn. Crim. App. Apr. 13, 2013) *perm. app. denied* (Tenn. Sept. 10, 2013) (stating that period of six weeks between guilty plea and motion to withdraw "is a substantial amount of time").

The second factor looks to the presence or absence of a valid reason for the delay in the filing of the motion. The trial court noted that in the hearing, the defendant did not provide a reason for the delay. We agree and conclude that because the record does not indicate a reason for the delay that this factor does not weigh in favor of the defendant. *See State v. Ronald McMillian*, No. M2012-02491-CCA-R3-CD, 2013 WL 4082628, at *4 (Tenn. Crim. App. Aug. 14, 2013) (finding that "[t]he lack of an explanation for the lapse of time between the plea and the motion to withdraw weighs against permitting withdrawal of the plea"); *cf Phelps*, 329 S.W.3d at 449 (concluding that second factor was inconclusive when the record was unclear as to when the meeting between the defendant and counsel took place and as to the length of time that elapsed between the defendant's instructions to counsel and

the filing of the motion to withdraw); *State v. Timothy Damon Carter*, No. M2010-02248-CCA-R3-CD, 2012 WL 2308293, at * 7 (Tenn. Crim. App. June 18, 2012) (finding second factor also inconclusive when evidence did not indicate when the meeting occurred at which the defendant indicated his desire to withdraw his plea, "or if it was at this meeting that the [d]efendant instructed his counsel to file the motion to withdraw his plea"). The trial court's finding that there was an unexplained delay was not an illogical conclusion based on a clearly erroneous assessment of proof. The court credited the testimony of the defendant that he contacted his attorney a week after entering his plea to inform counsel of his desire to withdraw the plea. However, the motion was not filed until thirty days after the defendant entered his guilty plea, and no explanation was provided for the delay. Thus, this factor does not weigh in the defendant's favor.

The third factor addresses the defendant's assertion or maintaining of innocence. The defendant contends that he never agreed to the facts and circumstances that the State presented because he answered affirmatively that he was entering his guilty plea because he believed that it would be in his best interest. The trial court found that there was no proof as to whether the defendant asserted his innocence. While the defendant did state, and the judgment sheet and petition to enter plea of guilty do reflect, that the defendant entered the plea in his best interest, he admitted that he heard and understood and discussed the facts of the States's proof with his attorneys and that he entered into the plea agreement knowingly and voluntarily. Nowhere in the record does the defendant affirmatively assert his innocence; instead his contention is that he could have received a better plea offer or been convicted of a lesser-included offense at trial. The fact that the defendant entered into the plea because it was in his best interest does not rise to the level of "asserting or maintaining innocence." *See McMillian*, No. M2012-02491-CCA-R3-CD, 2013 WL 4082628, at *4 (Tenn. Crim. App. Aug. 14, 2013) (finding that a defendant's best interest plea was sufficient to maintain conviction for aggravated assault when "nothing in the defendant's testimony suggested that he believed himself innocent of aggravated assault"). Thus, this factor does not weigh in favor of the defendant.

The fourth factor examines the circumstances underlying the guilty plea. The defendant contends that "totality of the circumstances surrounding the timing and entering of the plea" indicate that he was consumed with worry about his mother's illness and therefore incapable of knowingly and voluntarily pleading guilty. However, at trial he testified that he understood the specifics of the plea agreement and was entering his plea freely and voluntarily. He informed neither counsel nor the trial court that his mother's illness had rendered him not of a sound mind to plead guilty. He further testified at the withdrawal hearing that he instructed counsel to file a motion to withdraw his guilty plea after he returned to his cell and realized "this ain't no good deal," believing that he could receive a more favorable sentence if he proceeded to trial. The trial court noted that "nothing

unusual occurred when the agreement was entered before the [c]ourt." We agree and conclude that this factor weighs in favor of the State.

The fifth and sixth factors address the defendant's nature and background and the degree of experience the defendant has with the court system. The defendant concedes in his brief that these two factors weigh in favor of the State. The defendant completed the eleventh grade, has no history of mental illness, but does have an extensive criminal history and experience with the court system. Thus, we agree that these two factors weigh in favor of the State as well.

The trial court did not consider the seventh factor, as it found that the defendant had not established a "fair and just reason" for withdrawing his guilty plea. We also conclude there is no reason to consider the seventh factor, as none of the factors previously examined weigh in favor of the defendant.

We conclude that the trial court did not abuse its discretion in denying the defendant's motion to withdraw his plea. The trial court properly considered the *Phelps* factors and found that the defendant did not provide sufficient justification for the withdrawal of his plea, noting that the defendant "claims that the state of his mother's health affected his decision to plead guilty, but then admits that he basically just wants a better plea offer." While a "change of heart" is not, standing alone, a sufficient reason to deny a motion to withdraw a plea of guilty, the trial court should only permit withdrawal after it conducts a multi-factor analysis and concludes that the balance of factors weigh in favor of the defendant. *Phelps*, 329 S.W.3d at 448. Here, the balance of the factors did not weigh in favor of the defendant. Thus, we conclude that the trial court properly denied the motion to withdraw a guilty plea. The defendant is not entitled to any relief on this claim.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE

-8-