IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs February 2, 2016

**STATE OF TENNESSEE v. QUINTON BONNER**

**Appeal from the Criminal Court for Shelby County**
**No. 13-02771     James C. Beasley, Jr., Judge**

_____

**No. W2015-00812-CCA-R3-CD  -  Filed April 7, 2016**
_____

Defendant, Quinton Bonner, appeals the trial court's denial of a motion to withdraw his guilty plea. We affirm the judgment of the trial court. However, we remand the matter for entry of judgment forms in Counts 2, 3, and 4.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

TIMOTHY L. EASTER, J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and CAMILLE R. MCMULLEN, JJ., joined.

Harry E. Sayle III (on appeal), Memphis, Tennessee; Nigel Lewis, Assistant District Public Defender (at hearing and sentencing); and Dewun Settle (at trial and guilty plea), Memphis, Tennessee; and for the appellant, Quinton Bonner.

Herbert H. Slatery III, Attorney General and Reporter; Lacy Wilbur, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Chris West and Stephen Barnes, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

This is Defendant's direct appeal from the Shelby County Criminal Court's denial of his motion to withdraw his plea to aggravated assault. After a sentencing hearing the trial court imposed a ten-year sentence, as a persistent offender, to the Tennessee Department of Corrections.

In June of 2013, Defendant was indicted by the grand jury for two counts of aggravated assault, one count of domestic assault and one count of false imprisonment. A jury trial began on April 28, 2014.

Stacie Clayton, the wife of Defendant, testified about the events that gave rise to the indictment. According to Ms. Clayton, she and Defendant were engaged in an ongoing argument about Defendant's lack of "respect toward the home" and habit of coming home extremely late at night. Ms. Clayton had two children and she was frustrated by Defendant's behavior because "doors opening and closing certain times of the night" was not something that she and the children were used to. On the night of the incident, at around eleven or twelve o'clock at night, Defendant was not home. Ms. Clayton tried to prevent Defendant from coming in to the house when he arrived home by tying the front door and the storm door together. Ms. Clayton took both of her sons to bed with her because she "knew [Defendant] was going to be coming in rather late and [she] was worried about getting into an argument." She thought that by having the children in her room it would "keep down an argument."

Defendant arrived home between 1:00 a.m. and 3:00 a.m. He was "fussing and cussing" at Ms. Clayton when he came in to the house. Defendant started arguing with Ms. Clayton in the bedroom. During the argument, Defendant threw his cell phone against the wall, putting a hole in the wall. He informed Ms. Clayton that he was "tired of [her] shit." Defendant lifted up the mattress and pulled out a kitchen knife. Defendant grabbed Ms. Clayton by the neck, pushed her down on the bed, straddled her, and put the knife in her face between her eyes. Defendant told her that he would "kill" her. Ms. Clayton confirmed that the knife was actually touching her face and that she was "gasping for air" and feared for her life. Ms. Clayton told Defendant to get the knife out of her face, but he did not comply. Finally he got up and let her go. Defendant told Ms. Clayton that he was tired of it. Ms. Clayton asked Defendant to leave, but he would not leave. Defendant would not let Ms. Clayton leave the house. The couple eventually went to sleep. Defendant slept with his legs on top of Ms. Clayton.

The next morning, Ms. Clayton instructed one of her children to leave the house and call 911. When the police arrived, Defendant was surprised. The police confiscated the knife and took pictures of the bruises on the victim's throat. Defendant was defensive and "pretty much denied everything" when questioned by the police.

Defendant did not want to testify at trial. The trial court properly conducted a *Momon* hearing in order to insure that Defendant was making an informed decision. He called his sister, Sheryl Mitchell, to testify that after the incident, she saw Defendant and the victim together on numerous occasions. Defendant then rested and the State presented no rebuttal proof.

The trial court read the jury charge to the jury. The State delivered its closing argument. At this point, counsel for Defendant asked for a jury-out hearing. Defense counsel informed the trial court that Defendant now decided he wanted to testify. The

trial court denied the request because the defense had already put on proof, Defendant had already chosen not to testify, the State had already completed its closing argument, and the trial court had already charged the jury with the law. Counsel for Defendant then stated that Defendant wanted to accept the State's most recent plea offer. Counsel for the State informed Defendant that that the offer was no longer an option. Defendant then indicated that he wanted to plead guilty with the trial court to determine the manner and length of the sentence.

Defendant was placed on the stand. He testified that he "just lost" his father and did not "want to be locked up" and lose his mom too. He claimed that he wanted to "do what's right" because he was "tired of dragging through it." Defendant stated that he was fifty years old and that he was entering the guilty plea "freely and voluntarily" without coercion. Defendant informed the trial court that he and his wife are "still together" and that she is going to "come right back to [him]."

The trial court informed Defendant that he had the right to complete the trial. The trial court then informed Defendant of the range of punishment that could result from the entry of the guilty plea. Defendant stated that he wanted to "put it in [the trial court's] hands." At that point, the trial court asked Defendant several questions with regard to the guilty plea, including asking Defendant if he understood the plea and all of his rights. Defendant commented that it was the "hardest thing [he] did in [his] life" and that he was "scared" but that he wanted to plead guilty. The trial court, at that time, accepted Defendant's guilty plea to two counts of aggravated assault, one count of domestic assault, and one count of false imprisonment.

After the trial and the guilty plea hearing but prior to sentencing, Defendant filed a motion to withdraw his guilty plea. In the motion, Defendant claimed that "due to the death of his father" the week prior to trial, he "suffered from emotional trauma to the degree that he could not properly participate in his defense nor could he make a sound or rational decision about whether or not to enter a plea of guilty." Defendant claimed that it would be a manifest injustice to deny the motion.

Months before sentencing, the trial court held a hearing on the motion to withdraw the guilty plea. At the hearing, Officer Robert Halliburton testified that he responded to the call at the residence, observed the bruising on the victim, tagged a knife into evidence, and called his supervisor. After his supervisor arrived and assessed the scene and spoke with witnesses, Officer Halliburton was advised to arrest Defendant for aggravated assault.

Defendant also testified at the hearing. He claimed that he never told his attorney that he was guilty and that during the trial, his attorney informed him after the State's closing argument that his best option was to "cop a plea." Defendant maintained that he

did not want plead guilty. Defendant recalled that his father passed away right before trial so he just "gave up." Defendant insisted that "immediately after" the guilty plea he wrote his attorney a letter in which he expressed his displeasure for counsel's representation.

Defendant informed the trial court that he dropped out of school in fourth grade and that during his previous incarceration was unable to obtain a GED. Defendant admitted that he reported to a probation officer that he dropped out of school in tenth grade because he was ashamed about dropping out in the fourth grade.

Defendant maintained his innocence, claiming that his wife did not "want to see [him] happy." Defendant admitted that he had multiple offers from the State to settle the case—one for ninety days and one for three years. Defendant acknowledged that he was ineligible for a sentence of three years based solely on his prior criminal convictions. He claimed that he pled guilty because it was what his lawyer told him to do. Defendant claimed that he "understood certain things" during trial but there were other things that he did not understand. Defendant claimed that he tried to ask trial counsel questions during trial but that trial counsel just told him to "wait."

Defendant admitted that this was not his "first rodeo" because he had entered guilty pleas in the past but that he did not understand what was going on the day that he pled guilty.

The trial court questioned Defendant with regard to the guilty plea hearing. Defendant admitted that the trial court informed him on the range of punishment and the difference in going to trial versus pleading guilty. Defendant still claimed that he did not understand and that he relied on his trial counsel to "guide [him], to show [him] where [he] should go and what [he] should do. . . ."

Trial counsel was allowed to testify based on Defendant's allegations. Trial counsel indicated that he met with Defendant several times in preparation for trial and talked about different ways to approach the defense. Trial counsel recalled that Defendant had concerns about some inconsistencies in some of the police reports. Trial counsel did not bring up any issue with regard to the knife or inconsistencies in the police reports at trial because the knife had been tagged into evidence by the State and the reports contained some things that were "injurious to [Defendant]."

Trial counsel recalled Defendant wanting to plead guilty at the conclusion of the trial. Trial counsel explained to Defendant that this would be an "open" plea with no agreement with regard to sentence. He told Defendant that it was not a "great idea" but that it was ultimately Defendant's decision. Trial counsel felt that Defendant understood what was going on at the guilty plea. In fact, trial counsel stated that he "tried to be very

thorough" with Defendant because Defendant had "written the Board of Professional Responsibility, at least twice, maybe three times." Trial counsel "made sure that [Defendant] understood the [three-year] offer that he was rejecting." Trial counsel informed the trial court that he "practically got into a fist fight [with Defendant] when he turned down that three year offer." Trial counsel was "surprised" when Defendant did not take the offer and even continued to ask the State for that offer when the trial began. Trial counsel denied that Defendant told him "immediately" after the plea that he wanted to withdraw the plea.

At the conclusion of the hearing, the trial court recounted the proceedings and commented:

> [A]t no time did I ever feel that [Defendant] did not understand what he was doing. At no time did I ever feel that he was confused, or that he was not understanding what we were going through.

The trial court noted that Defendant was "very familiar with the system" because of his "five, six, or seven prior felony convictions" and prior guilty pleas. The trial court was satisfied that Defendant received "competent representation" and that the guilty plea was entered "freely and voluntarily." The trial court denied the motion to withdraw and stated:

> I don't find that there is any fair and just reason to set this aside. To me, I find that [Defendant] knew what he was doing and made a valid choice, whether it's the right choice or the wrong choice, I don't know, but there's no basis for me granting that and I think to set this aside was nothing more than [Defendant's] argument that this is not what he wanted to do and that he was coerced into this and enticed into this and led into this by [trial counsel]. I don't find that there's any basis for that statement, whatsoever.

The trial court also entered a written order denying the motion. In the written order the trial court commented that Defendant had "the burden of showing a manifest injustice would occur if the [defendant] was not allowed to withdraw the plea."

Defendant sought an interlocutory appeal in this Court. He later filed a motion to withdraw the appeal, and his appeal was dismissed by this Court. *See State v. Quinton Bonner*, No. W2015-00277-CCA-R9-CD (Tenn. Crim. App. Mar. 23, 2015) (order).

The trial court held a sentencing hearing. At the hearing, the trial court sentenced Defendant as a Range III, persistent offender to ten years for the conviction for aggravated assault. The judgment form reflects that Defendant was found "guilty" of aggravated assault. Additionally, in the special conditions box the judgment indicates

that "cts 2, 3, 4, NP/NC."[1] There are no judgment forms for these counts in the technical record. At the sentencing hearing, counsel for the State indicated that Defendant "pled guilty to just the aggravated assault because there were four counts to the indictment. Count one was aggravated assault and count two was the alternate theory on aggravated assault, count three was domestic assault or count four was domestic assault and for purposes of the open plea, he pled to the aggravated assault."[2]

Defendant appeals the denial of the motion to withdraw the guilty plea.

*Analysis*

On appeal, Defendant insists that the trial court improperly denied the motion to withdraw the guilty plea. Specifically, citing *State v. Phelps*, 329 S.W.3d 436 (Tenn. 2010), Defendant insists that the trial court abused its discretion in applying the incorrect standard and failing to consider the relevant factors prior to denying the motion to withdraw the guilty plea. The State disagrees.

We review a trial court's disposition of a defendant's motion to withdraw his or her plea of guilty for an abuse of discretion. *Phelps*, 329 S.W.3d at 443 (citing *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005)). A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party. *State v. Jordan*, 325 S.W.3d 1, 38-40 (Tenn. 2010). This Court will also find an abuse of discretion when the trial court has failed to consider the relevant factors provided by higher courts as guidance for determining an issue. *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007).

Tennessee Rule of Criminal Procedure 32(f) provides that a guilty plea may be withdrawn before a sentence is "imposed . . . for any fair and just reason." After a sentence is imposed but before the judgment is final, a plea may be withdrawn "to correct manifest injustice." Rule 32(f) makes it clear that "a criminal defendant who has pled guilty does not have a unilateral right to later withdraw his plea either before or after sentencing." *Phelps*, 329 S.W.3d at 444 (citing *Crowe*, 168 S.W.3d at 740; *State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003)).

In *Phelps*, the Tennessee Supreme Court adopted the following list of factors used by the United States Court of Appeals for the Sixth Circuit in determining what

---

[1] The Shelby County criminal courts use this abbreviation to note nolle prosequi with no cost.

[2] The transcript of the guilty plea hearing indicates that Defendant pled guilty to two counts of aggravated assault, one count of domestic assault, and one count of false imprisonment.

constitutes "any fair and just reason" supporting the withdrawal of a guilty plea prior to sentencing:

> (1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; and (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* at 446 (quoting *U.S. v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)); *see U.S. v. Spencer*, 836 F.2d 236, 239-40 (6th Cir. 1987). However, the court asserted that "this list of factors is not exclusive; that no single factor is dispositive; and that the relevance of each factor varies according to the circumstances surrounding both the plea and the motion to withdraw." *Id.* (citing *Haygood*, 549 F.3d at 1052). In addition, it stated that "a trial court need not consider the seventh factor unless and until the defendant establishes a fair and just reason for permitting withdrawal." *Id.* at 446-47 (citing *U.S. v. Ellis*, 470 F.3d 275, 286 (6th Cir. 2006)); *see Spencer*, 836 F.2d at 240.

Looking to the trial court's decision herein, we acknowledge, as pointed out by Defendant, that the trial court's order denying the motion to withdraw references the improper standard. Specifically, the trial court comments in the order that Defendant has failed to meet his burden to show a "manifest injustice would occur if [he] was not allowed to withdraw the plea." However, at the hearing on the motion to withdraw, the trial court made strong and clear findings of fact from the bench, examining the factors from *Phelps*, and commenting that the trial court could not "find that there is any fair and just reason to set this aside." Thus, there is an apparent conflict between the transcript of the hearing on the motion to withdraw the guilty plea and the order denying the motion. When there is a conflict between the judgment or order, as in this case, and the transcript of the trial court's statements, the transcript controls. *State v. Moore*, 814 S.W.2d 381, 382-83 (Tenn. Crim. App. 1998) (citing *State v. Zyla*, 628 S.W.2d 39, 42 (Tenn. Crim. App. 1981); *Farmer v. State*, 574 S.W.2d 49, 50 (Tenn. Crim. App. 1978)); *see also State v. Rowden*, No. M2012-01683-CCA-R3-CD, 2013 WL 4774131, at *12 (Tenn. Crim. App. Sept. 5, 2013). Moreover, even if the trial court used the wrong standard in its order, the error is harmless. It is clear that in the hearing, the trial court examined the *Phelps* factors. The trial court discussed the time that elapsed between the plea and the motion to withdraw, factor one, and noted that the trial court did not really understand "the position [Defendant] took after the fact, about wanting to withdraw the plea." The trial court did not note any particular reason for the failure to withdraw the plea earlier in the proceedings, quite obviously because the motion to withdraw was filed fairly quickly.

The trial court, with respect to factor three, found it was not clear if Defendant consistently maintained his innocence. The trial court pointed to Defendant's desire to go to trial, then his desire to plead guilty, and then his desire to withdraw the guilty plea. The trial court recapped the entirety of the events leading up to the entry of the guilty plea, including Defendant's insistence on going to trial, Defendant's claim that he did not want to testify, Defendant's attempt to change his mind to then testify at the trial, and Defendant's desire to seek a guilty plea after the conclusion of the trial. This discussion of factor four by the trial court was extensive and weighed against Defendant's favor. The trial court noted Defendant's familiarity with the court system and the fact that he had pled guilty in the past, factors five and six of *Phelps*. Both of these factors weighed against Defendant. It was not necessary for the trial court to analyze factor seven, potential prejudice to the government if the motion to withdraw is granted, as the trial court determined Defendant did not establish a fair and just reason permitting withdrawal of the plea. *See Phelps* 329 S.W.3d at 446-47 (citing *United States v. Ellis*, 470 F.3d 275, 286 (6th Cir. 2006)).

We acknowledge that in *Phelps,* the court noted that if the "trial court applies the correct non-exclusive multi-factor analysis and determines that the balance of factors weighs in the defendant's favor, the trial court should allow the defendant to withdraw his plea, even if the defendant's reasons could be characterized as a 'change of heart.'" 329 S.W.3d 428. However, the court cautioned "that a defendant should not be allowed to pervert this process into a tactical tool for purposes of delay or other improper purpose." *Id.* (citing *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991) (quoting *United States v. Carr*, 740 F.2d 339, 345 (5th Cir.1984))). In this case, the trial court determined that the factors did not weigh in Defendant's favor. The trial court did not abuse its discretion. Defendant did not show a fair and just reason for the withdrawal of the plea other than a change of heart.

*Conclusion*

The trial court's order denying the motion to withdraw the guilty plea is affirmed. On remand, the trial court should correct the judgment form to indicate that Defendant pled guilty. Additionally, the trial court should enter judgment forms for counts 2, 3, and 4 in accordance with *State v. Marquize Berry*, No. W2014-00785-SC-R11-CD (Tenn. Nov. 16, 2015) (order).

_____
TIMOTHY L. EASTER, JUDGE