IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
March 26, 2024 Session

**STATE OF TENNESSEE V. DOMINQUE JUSTICE**

**Appeal from the Criminal Court for Claiborne County**
**No. 2020-CR-3443      Zachary R. Walden, Judge**

**No. E2023-00529-CCA-R3-CD**

In 2020, the Defendant, Dominque Justice, entered an open plea to twenty-eight counts of rape of a child, twenty counts of aggravated statutory rape, and forty-eight counts of incest. Eight months later, the Defendant filed a motion to withdraw his plea which the trial court denied. At the subsequent sentencing hearing, the trial court imposed an effective sentence of one hundred and five years. On appeal, the Defendant contends that his motion to withdraw his guilty plea should have been granted and that the trial court erred when it sentenced him. After review, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which JOHN W. CAMPBELL, SR., and MATTHEW J. WILSON, JJ., joined.

Paul M. Estep, Tazewell, Tennessee, for the appellant, Dominque Justice.

Jonathan Skrmetti, Attorney General and Reporter; Garrett D. Ward, Senior Assistant Attorney General; Jared R. Effler, District Attorney General; and Carla N. Brewer, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**
**I. Facts and Background**

This case arises from the Defendant repeatedly sexually abusing his younger sister, the victim, beginning when she was two years old and when he was approximately nine years old. The abuse lasted for approximately eleven years, and the victim was thirteen and the Defendant was twenty at the time the abuse was discovered. The Defendant was

indicted for twenty-eight counts of rape of a child, twenty counts of aggravated sexual abuse of a child, forty-eight counts of incest, and one count of continuous sexual abuse of a child. The Defendant entered an "open" plea to all counts of the indictment except the count of continuous sexual abuse of a child. At the June 4, 2021, plea submission hearing, the State presented the following facts as the underlying basis for the plea:

> The [D]efendant['s] and the victim's aunt, Julie Wilhoit, would have been called to testify. She would have testified that she removed the victim from the home [] because of concerns she had when she saw the victim and the [D]efendant sharing the same bed as well as other concerns.

> The victim was with [Ms. Wilhoit] in June of 2019, when [the victim] ran away from her home and the police were called. After she was found by law enforcement, the victim made a disclosure that began the investigation in this case. The State would have relied upon the testimony of Detective Rocky White with the Claiborne County Sheriff's Department who would have been called to testify that he received the case from the on-call detective . . . [concerning] a runaway. Once the victim began to talk to them, the sexual assault was disclosed[.]

> [Detective Jason Henegar] would have been called to testify. As the investigating officer on the case, he did many things to investigate including a forensic interview . . . with the victim . . . where she disclosed fully the assault that occurred. Also through the testimony of Detective Henegar the State would have introduced the almost three-hour long confession in which the [D]efendant in graphic detail described all of the acts he committed against his sister after having been advised of his *Miranda* rights and waiving them.

> . . . .

> The State would have called Dr. Valerie Miller with East Tennessee Children's Hospital who would have been called to testify that she saw the victim . . . and she disclosed that her older brother, [the Defendant], had been making her perform oral sex on him, vaginally penetrating her and other detailed abuses for, as she said, as long as she could remember, and that it happened almost every day and that she felt no one would believe her.

> And then finally, the victim who is now [fifteen] years old would have been called to testify about all of the abuse which she can recall and recounts in great detail.

2

Following the State's recitation, the trial court asked the Defendant if the statement of facts was correct, and he answered in the affirmative. The Defendant also confirmed with the trial court that he was entering his plea voluntarily. The Defendant indicated that he understood the charges against him, that he had a right to proceed to trial and present witnesses, and that he was giving up those rights and others by entering his plea. The Defendant stated that he had signed the plea form voluntarily after it had been explained to him by his attorney, who he agreed was prepared for trial.

On January 24, 2022, counsel filed a motion to withdraw his representation and stating that the Defendant wished to withdraw his plea. On September 13, 2022, the Defendant, *pro se*, filed an amended motion to withdraw his guilty plea on the grounds that he had been denied his right to a speedy trial. Appointed counsel filed a memorandum of law in support of the motion stating that, because the Defendant had five different attorneys, he had been inappropriately influenced leading up to his trial and had hastily pleaded guilty, thus necessitating, in the interest of fairness and justice, that his plea be withdrawn. The memorandum addressed the factors set out in *State v. Phelps*, 329 S.W.3d 436 (Tenn 2010), including that the Defendant had the burden of establishing the grounds for withdrawal of the guilty plea. Thereafter, the trial court held a hearing on the motion, noting that it was a pre-sentencing phase motion. At the hearing, the Defendant testified that he was in foster care for nine years and sustained mental and emotional abuse, as well as sexual abuse, throughout his childhood. He stated that his precarious living situation had forced him to drop out of school and that he had completed the ninth grade. The Defendant recalled that, after entering his plea, he realized he was exposed to a possible twenty-five-year sentence and that he would be at the "mercy" of the court by virtue of the open plea. The Defendant explained the delay in filing the motion on his inability to get in contact with his lawyer. The Defendant stated that he wished to proceed to trial. He testified that there was nothing erroneous about the "procedure itself" through which he entered his plea, but that he felt like he was not "fully coherent" when he entered it. He stated he was somewhat intimidated and was acting "out of impulse."

The Defendant stated that he had been involved in the criminal justice system since the age of eleven. He said, as an adult, he had taken part in court proceedings for misdemeanors or other petty crimes.

On cross-examination, the Defendant stated he had several jobs after leaving school. He agreed he had four criminal convictions as an adult but stated that felony charges were "completely different." He agreed that, about a month after he entered his plea, he changed his mind and "thought better of it." The Defendant agreed that he was asked about and affirmed that he understood the nature of his actions the day he entered his plea.

3

At the conclusion of the hearing, the trial court heard arguments and made the following statements:

Rule of Criminal Procedure 32(f)(1) does allow for a mechanism for a defendant to file a motion to withdraw a guilty plea. When that is done prior to sentencing as in this case, the standard is any fair and just reason and that is a very broad standard . . . . The case finds that in most circumstances, we can find a fair and just reason. There have been different fair and just reasons [] thrown out [by the parties in this case]. One seems to be some suggestion of intimidation or coerciveness in the guilty plea. One seems to be the speedy trial issue. Another issue seems to be that [the Defendant] has had five different attorneys and went through a lot of unusual procedural machinations through this [process].

The Tennessee Supreme Court directs the Court to look at the [*State v. Phelps*, 329 S.W.3d 436 (Tenn. 2010)] factors[.] The first one is the amount of time elapsed between the plea and the motion to withdraw the plea. The record is very clear that the plea was entered on June 4th of 2021, and the first [informal] step . . . was [the Defendant's] attempt to orally withdraw his plea on January 4th of 2022, which was approximately eight months after the plea was entered. That is an extensive period of time. Unquestionably, that weighs heavily against [the Defendant's] motion.

The second factor is the presence or absence of a valid reason for the failure to move for withdrawal earlier in the proceedings. The proof on this factor is a little bit convoluted. [The Defendant's] testimony was that he thought that he first raised this issue about a month after he entered the plea. [The Defendant] also made admissions that he struggled to [] keep up with the time as this case has gone through history. My understanding of his testimony was that he raised this in Court about a month or shortly after a month after the plea, but we know from the record that that was about eight months later so I'm not clear if he really did start attempting to withdraw his guilty plea one month after or if it was closer to eight months. Of course, [the Defendant] has the burden to show that it was a shorter period of time because I think there was some credibility issues, and that's what I'm basing the finding on. I will also note that [the Defendant] did not dispute that he did have access to phone calls. He was [] impeached on that [by the State] when [it was] pointed out that he had made 15 calls which did not include calls to his attorney. So, that factor also weighs slightly against [the Defendant].

4

The third factor is whether the defendant has asserted or maintained his innocence, and it is incredibly significant to me that as [the Defendant] had the opportunity [to assert his innocence] in multiple versions of this motion and in his testimony today . . . and still has not done so. Despite given that opportunity in open court here today, he still has not stated that he is not guilty of these charges but rather relied on a not guilty plea at arraignment, but he has not reasserted that his is not guilty here today or at any time during the [pendency] of his motion to withdraw. So I find that factor three weighs heavily against [the Defendant].

The fourth factor is the circumstances underlying the entry of the guilty plea. . . . . I also do not find it credible that he does not remember his plea. I note that he stated for the record that there was nothing wrong with the procedure itself. He stated that he didn't think he was fully coherent during that plea. That is not reflected in the transcript . . . [and] nothing in the transcript indicates that he was not fully coherent and, [he was] asked [] about his mental condition and whether he was under the influence of any substances or medication. There was inconsistent testimony frankly on [the Defendant's] memory of his plea. At times, it seemed he could not remember anything at all about it but other times, he remembered specific people in the courtroom and specific questions that were asked.

[The Defendant] described that the plea process was intimidating, however, there was no showing that it was unduly intimidating or coercive. I acknowledge that anyone [who] has to stand up and speak to the Court and acknowledge guilt of serious crimes may find the process to be intimidating. I would be afraid to do that, I think most people would [be], but that doesn't create a problem with the guilty plea in and of itself. There was no showing that he was coerced or threatened. In fact, he acknowledged at the guilty plea [hearing] that he was not coerced or threatened and that he entered the plea upon his own free will. So the fourth factor also weighs against [the Defendant]. . . . [The Defendant] was the only defendant on the docket. It was a special docket for [the Defendant] to enter his plea waiver and impose the guilty plea, so it certainly was not coercive and regards to that circumstance of the guilty plea.

Next, I'm required to consider the [D]efendant's nature and background. I do note that the [D]efendant has had a troubled childhood that involved foster care, childhood trauma. [T]here has been proffer that he suffers from some mental health diagnoses, and that he dropped out of high school. He has worked, although it seems that he has probably jumped

5

around from job to job quite a bit, and he is presently 29 years old. While there are some circumstances in his background that develop sympathy, there is nothing in the background that [could] really connect to the withdrawal [motion] here today. So I don't give any weight one way or the other to the fifth factor.

The sixth factor is the degree to which the [D]efendant has had prior experience with the criminal justice system. The [D]efendant testified that he first encountered the justice system at age 10 or 11. He is presently 29 years old. So he spent just half of his life involved in the justice system in some way. This includes multiple misdemeanor convictions in multiple states. He has also violated probation in multiple states. I note that he was able to file a Bar complaint, was aware of the Board of Professional Responsibility, has filed at least two pro se motions with this Court. . . . . I heard him coherently speak today of other common legal terms such as describing himself as indigent. When he was questioned about pro se motions, he seemed to understand the term. He also coherently explained the sentencing process that he agreed to as part of his plea agreement. So I do think that his experience with the criminal justice system, while he has not been in felony court before and has not pled guilty to a felony before, that he did have experience with the criminal justice system to appreciate what he was doing.

Because I find that those factors – factors one, two, three, four, and six each weigh against [the Defendant] and that factor five bears no weight, under *Phelps*, I do not find that there is a fair and just reason to allow the withdrawal of the guilty plea. Therefore, I am not weighing factor seven which is the potential prejudice to the Government if the motion to withdraw is granted.

The trial court denied the Defendant's motion to withdraw his guilty plea and subsequently held a sentencing hearing.

The following evidence was presented at the sentencing hearing: Jason Henegar testified that he was a lieutenant detective with the Claiborne County Sheriff's Office and was assigned to the investigation of this case. He initially served a search warrant on the Defendant's home where he found the Defendant hiding behind a water heater. Lieutenant Henegar also encountered the victim at her forensic interview and in court proceedings. Lieutenant Henegar stated that he interviewed the Defendant, and the recorded interview was played for the trial court. He described the Defendant's confession, made during the

6

interview, as extremely "detailed" and recalled that the Defendant outlined sexual events that transpired with the victim from when she was two to thirteen years old.

At the conclusion of the hearing, the trial made the following statements:

> The Court has considered the evidence and the arguments offered here today as well as the briefings filed by both parties. I've considered the presentence report. The presentence report demonstrates a background of the [D]efendant where he moved around a lot, suffered abuse throughout his childhood. There are some misdemeanor offenses in his criminal history. The [D]efendant has stated some needs for mental health treatment, although there are no actual diagnoses of that. I've also considered the Strong R report which is the validated risk and needs assessment. I do note that he scores as a high needs offender. Part of that is due to his periodic homelessness and his lack of education and employment, but there is clearly other problems as well. There is obviously an alcohol problem that I do think it kind of leads to aggression based on the [D]efendant's own words. Additionally, I've considered the psychosexual evaluation. While the psychosexual evaluation notes that the [D]efendant was mostly forthcoming, I do notice at least some inconsistencies between what was stated in the psychosexual evaluation and the [D]efendant's confession, portions of which were played in this hearing today. It is deeply concerning, though, that the psychosexual evaluation states the fixation on prepubescent girls which is obviously consistent with the facts in this case.
>
> The [D]efendant, by agreement, is a range one offender as to counts eight through 14, 56 through 96, 36 through 55, but per statute, the rape counts, counts one through seven and 15 through 35, the rape of a child counts, are to be sentenced as a range two offender even though he is not a range two offender. That's a range of 25 to 40 years for each count.
>
> The State has asked me to consider enhancement factors, first of all, that the [D]efendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. As to the incest counts and the aggravated statutory rape counts, the misdemeanor charges clearly establish that factor. The misdemeanor counts alone do not establish that factor as to counts one through seven and 15 through 35, however, I do find that that factor still applies based on the numerous confessions of serious rape and sexual battery incidents involving both the victim in this case and other victims that occurred in the State of

7

North Carolina, the State of Kentucky and the State of Georgia, so I do apply factor one.

The State has also asked me to consider applying factor seven -- enhancement factor seven, that the offense involved a victim and was committed to gratify the defendant's desire for pleasure or excitement. I am applying that factor based on -- the psychosexual corroborates it, but it is really based on the interview of the [D]efendant which I reviewed here today. His manner in describing each of the sexual encounters that he recounted for the detective was just rather disturbing.

He described it as, you know, a way to display his love, but it is also clear that that is a way to satisfy his own pleasure. Specifically, I found that to be present in his recount of some of the -- some of the recounts of the oral sex acts.

On -- the State has also asked me to apply factor number eight, the [D]efendant, before trial or sentencing, failed to comply with conditions of a sentence involving release into the community, and I do find that factor. There were previous violations of probation on a misdemeanor theft sentence. Frankly, I'm giving that factor no weight. I think comparing misdemeanor theft probation to what we are dealing with here is just apples and oranges, so I do find that factor is present, but I don't think it is appropriate to apply weight in this case.

The prosecution has also asked me to find factor number 14, that the [D]efendant abused a position of private trust to facilitate the commission or fulfillment of the offenses. I am not finding that factor present in this case. I don't -- while I do suspect it is true that the defendant was entrusted to babysit, at least the incidents that he was describing, I don't think I was clear enough on the timeline that they occurred during the period where he was babysitting. I think a lot of the times when he was babysitting was actually when he was in Georgia. However, I just don't think the State's quite met its burden on factor number 14, so I'm not going to apply that, although I recognize the circumstances, and those are appropriate to consider under other principles of sentencing.

As far as mitigating factors, while I am giving it only a very small amount of weight, I am finding factor number 13, any other factor consistent with the purpose of Title 45 (sic), Chapter 35. In the interest of justice, I do believe that [the Defendant] was abused throughout his childhood. I will

8

give one further than what [Counsel] suggested.  He suggested that I should embrace the allegations of abuse he suffered at face value because he -- because we are accepting his confession to committing sexual abuse at face value on the interview.  I suspect that it is far worse and deeper than anything he described.  However, that is - does not tend to justify what happened, however, I am going to consider that as a mitigating factor in this case.

Additionally, I must consider whether to exercise discretion on consecutive sentencing.  In my discussions with counsel during their arguments, I considered that the defendant is an offender whose record of criminal activity is extensive.  While there is the presence of some misdemeanor prior convictions, I don't think that those alone would warrant applying this factor.  However, the fact that this abuse against this girl continued for 11 years -- and I do find by a preponderance of the evidence that those acts did occur for 11 years as he described -- that alone is enough, and the fact that there are so many counts in this case involving different specific incidences is also enough to warrant consecutive sentencing under this chapter.

Additionally, the [D]efendant is convicted of two or more statutory offenses involving sexual abuse of a minor and that is true, that is not in dispute, with consideration of the aggravating circumstances.  Now, the -- not all of the aggravating circumstances have to be present in order to impose discretionary consecutive sentencing under this factor.

The relationship between the [D]efendant and the victim.  This is especially aggravating to me because of how the [D]efendant groomed this girl from her infancy.  From the time she was in diapers, he developed this relationship.  Of course, it was his both biological and adopted sister.  However, for a 13-year old to be able to consider her brother her boyfriend is so warped beyond comprehension, and the reason that it is so warped is because of the abuse that this [D]efendant perpetrated against her from the time she was two years old.  That is the only way a 13-year old could even comprehend that that was acceptable for a brother and sister to have a boyfriend, girlfriend relationship as they have described.

The time span of the [D]efendant's undetected sexual activity is significant.  It began at age two until the victim finally told someone when she was 13 years old, so when it began until it ended was approximately 11 years, and that is a substantial amount of time.

9

The nature and scope of the sexual acts. Certainly, that is an aggravating factor that is present in this case. There were 48 incidences of sexual contact, 28 counts of rape of a child, 20 additional counts of aggravated statutory rape. Somehow it bothers me more in a way, these 20 counts of aggravated statutory rape, because that means the prior 28 incidences just that happened in Claiborne County, not counting the countless more that happened in other locations, it was perpetrated so many times to the point that this victim did somehow – consent isn't the accurate word but at least acquiesced to these acts, and that is only because of the extreme manipulation that this [D]efendant committed upon her. Additionally, not only the number of acts but the scope of them.

We heard in this interview that the [D]efendant raped this young girl vaginally, orally, anally, digitally, every way imaginable. He did it when other people were present, he did it in vehicles, he did it at other people's homes. He engaged in video chatting – phone sex is what the common term would be. Every way possible to violate his sister, he did.

The extent of the residual physical and mental damage to the victim. [I]t's a close question as to whether the State has met its burden as to the extent of damage to the victim. I strongly suspect that this victim is so damaged she just couldn't be here today. I don't know that, I can't really factor that into my decision, however, the other aggravating circumstances alone are enough to apply this factor, although I do believe that there is sufficient evidence to see that the victim has suffered mental damage based on the [D]efendant's confession. There [was] the pacing - what he described as the pacing which most of us would consider the rocking back and forth - was just especially disturbing. It was apparent from his interview that he recognized that that was a time where she was mentally vulnerable. I believe the detective asked him something along the lines of, you know, is - can you tell when she's okay or not in the mood, and when she's not in the mood is when she puts music on and sits on the bed and rocks back and forth. That is not a normal behavior for a 13-year old, that is an obvious sign of mental damage.

Further, the fact that a 13-year old would - as I previously stated, would consider a 20 something year old brother to be her boyfriend is clearly a sign of mental damage, so while I'm giving less weight to that aggravating factor because of how the State proved its case today, I do think it is present, but I am relying more heavily on the other aggravating factors in determining

10

that the condition exists to allow me the discretion to impose consecutive sentencing.

I've also considered the purposes and principles of sentencing. First of all, a defendant should be punished by the imposition of a sentence justly deserved in relation to the seriousness of the offense. Justice is hard to come by in this case to have a just - a sentence justly deserved because I don't think the law truly allows [the Defendant] to suffer what he justly deserves for what he has done to this young girl. However, within the confines of the law, I do think we can fashion an appropriate sentence that reflects the seriousness of these offenses.

Punishment should be imposed to prevent crime and promote respect for the law by providing an effective general deterrent to those likely to violate the criminal laws of this state. The State has provided proof of the presence of the sexual abuse of children in this community and in this judicial district. Likely due to the circumstances of 2020, that continues to increase throughout this district, and there is a need to generally deter.

Additionally, we should consider restraining defendants with a lengthy history of criminal conduct, and [the Defendant] has a lengthy history of criminal conduct because for the last, at least 11 years, he has had inappropriate sexual contact with the victim in this case as well as others. And at some point, we just have to protect the public from dangerous people.

I also have to consider encouraging effective rehabilitation of those defendants where reasonably feasible by promoting the use of alternative sentencing and correctional programs that elicit the voluntary cooperation of defendants. I have no doubt that the [D]efendant has suffered abuse as I previously stated and could greatly benefit and probably desperately needs some form of therapy or other mental health services, however, I can only consider that where it is reasonably feasible. And in this case, given the severity of the crime, I don't know that it is reasonably feasible to sentence him in a way that is going to get him those services.

There is no need for restitution in this case which is another consideration.

In order to implement those purposes, I need to consider the following principles, first of all, sentences involving confinement, and by agreement, alternative sentencing was already denied at the plea, that sentences

11

involving confinement should be based on the following considerations, first, that confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct. That's also considered under the purposes, and as I previously stated, at some point, we use incarceration to protect society from dangerous people. And I do think that [the Defendant] is a dangerous person as far as children are concerned who are among the most vulnerable in our society.

The sentence imposed should be no greater than that deserved for the offense committed. Doing some back of the napkin math, I think if I ran all of these together and maximum within the range, I could sentence [the Defendant] to 1,180 years if I've done my math correctly. I think that's - 20 times 48 is 960, and then 20 times six for the "C" felonies is 120. And it may be that 1,180 years is deserving. However, inequalities in sentences should - unrelated to the purposes of this chapter should also be avoided and while this is among the most serious of sexual offenses that I have heard and that our experience the detective has heard, that is probably too much of an outlier sentence.

The potential or lack of potential for rehabilitation or the treatment of [the Defendant] should also be considered in determining the length of the term imposed. Frankly, I find [the Defendant] to have very little potential for rehabilitation. I have in addition to today, I've also interacted with [the Defendant] at prior hearings. Not at any point, in that interview, in his statement here today, or when he tried to unwind his guilty plea when he took the stand, has he ever expressed - truly expressed remorse. He said the words, I'm sorry here today. That was probably the most insincere allocution I have ever heard. The words were there, the meaning behind them clearly was lacking, but there is nothing at any point, even recounting every sexual encounter that he could remember in that video, did [the Defendant] ever seem ashamed of what he did, did he ever seem sorry for what he did, did he seem to appreciate the damage that he inflicted upon the victim in this case.

The lack of understanding that it's inappropriate to touch a two-year old in a sexual manner or to rape a 12-year old and 13-year old, it truly is one of the most disturbing things that I've seen. I don't know if it would have been any less disturbing if the actual acts had been displayed in this Courtroom via evidence than to hear him recount them in a way that seemed like nothing was wrong with what he did.

12

I've considered the arguments made by both parties. I've considered [Counsel's] arguments as to a mitigated sentence of 25 years based on the tragic childhood and -- and [the Defendant], I do think that you were failed in a lot of ways by the people around you. At some point, someone should have seen some type of warning and gotten you help or intervened at a much, much earlier time, and that would have prevented at least some of the injuries that have been caused in this case. However, it does not excuse what you know to be wrong, and here is how I know that [the Defendant] knows that it is wrong for an adult to have sex with a 13-year old. Because when [the Defendant] was talking about the victim in this case, developing an Internet relationship with an adult male, he called the adult male, and he said, do you know how old she is, she's only 13. Why did he say that, because he knew it was wrong for an adult male to have sex with a 13-year old, even setting aside the fact that it's his sister, but that was a manipulation. He wasn't trying to protect her from an older male. There was no point in that, he was already an older male projecting that abuse. That was a manipulation to keep others from being around her and to - for him to continue to have only his influence over the victim in this case.

I've considered the nature and characteristics of the criminal conduct involved. I have already discussed that at several points in my decision so far here today. In addition to the just extreme disgust that I have towards his characterization of this offense, I'm even more bothered - continue to be more bothered by the evidence that after being incarcerated, [the Defendant] still tried to contact the victim via the jail phone in violation of protective orders, or perhaps that's why the protective orders went down. I don't want to misspeak on that issue because I'm not clear which of those came first. However, he stood here and said that the victim in this case knows that I'm not a danger to her; I disagree. The only way that the victim (sic) may not be a danger to her is if he just - she just ages out of what he finds attractive, but I suspect even then due to the fixation that he's developed with her including the fixation that has continued throughout his time in custody, that that victim will always be in danger per - and probably is still in danger of at least some mental trauma even when [the Defendant] is in prison because being in jail has not stopped him from contacting her.

I've considered the statistical information provided by the Administrative Office of the Court, sentencing practices. I've already discussed the statement the defendant made and just the lack of heart behind it. I mean, it was clearly read with no sincerity, no belief that the words that he was telling this Court were true.

13

One thing I will note when we consider extensive criminal activity which is different from extensive criminal history, but in this case, we're looking at prior activity and behavior including activity encompassed by the indictment, that can be used both to enhance a particular sentence within the range and for consecutive sentencing.

So for the foregoing reasons, I'm going to pronounce the following sentence. [].

As to counts one through seven, I sentence you to 35 years at 100 percent. As to counts 15 through 35, I sentence you to 30 years at 100 percent. Counts eight through 14 merge. Counts 56 through 76 also merge. For counts 77 through 96, I sentence you to five years on each of those counts. And then counts 36 through 55 merge with those counts.

As to consecutive sentencing: Counts two through seven shall be consecutive to count one but concurrent with each other; counts 15 through 35 will be concurrent with each other but consecutive to counts one and two; and counts 36 through 55 will be concurrent to each other -- or I -- excuse me -- counts 76 through 96 will be concurrent with each other but consecutive to the prior counts, for an effective sentence of 105 years.

It is from these judgments that the Defendant appeals.

## II. Analysis
### A. Plea Withdrawal

On appeal, the Petitioner argues that the trial court erred when it denied his motion to withdraw his plea because the *Phelps* factors support withdrawal. The State responds that the *Phelps* factors weigh against a finding that there was a fair and just reason to permit the withdrawal of the plea. We agree with the State.

A defendant's right to withdraw a guilty plea is governed by Tennessee Rule of Criminal Procedure 32(f):

(1) Before sentence is imposed, the court may grant a motion to withdraw a guilty plea for any fair and just reason.

14

(2) After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to correct manifest injustice.

A defendant who has entered a guilty plea does not have a right to unilaterally withdraw the plea. *Phelps*, 329 S.W.3d at 444. A trial court's decision regarding a defendant's motion to withdraw a plea is reviewed for an abuse of discretion. *Id.* at 443 (citing *State v. Crowe*, 168 S.W.3d 731, 740 (Tenn. 2005)). "An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion." *Crowe*, 168 S.W.3d at 740 (citing *Goosby v. State*, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995)). A trial court also abuses its discretion "when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, . . . applies reasoning that causes an injustice to the complaining party[, or] . . . fail[s] to consider the relevant factors provided by higher courts as guidance for determining an issue." *Phelps*, 329 S.W.3d at 443 (internal citations omitted).

The Tennessee Supreme Court has concluded that trial courts should use "the federal courts' non-exclusive multi-factor approach" in determining whether to permit a defendant to withdraw a plea. *Id.* at 447. Those factors ("*Phelps* factors") include:

(1) the amount of time that elapsed between the plea and the motion to withdraw it; (2) the presence (or absence) of a valid reason for the failure to move for withdrawal earlier in the proceedings; (3) whether the defendant has asserted or maintained his innocence; (4) the circumstances underlying the entry of the guilty plea; (5) the defendant's nature and background; (6) the degree to which the defendant has had prior experience with the criminal justice system; (7) potential prejudice to the government if the motion to withdraw is granted.

*Id.* at 446 (quoting *United States v. Haygood*, 549 F.3d 1049, 1052 (6th Cir. 2008)). "[N]o single factor is dispositive," and "the relevance of each factor varies according to the circumstances surrounding both the plea and the motion to withdraw." *Id.* (citing Haygood, 549 F.3d at 1052). The list of factors is not exclusive, and "a trial court need not consider the seventh factor unless and until the defendant establishes a fair and just reason for permitting withdrawal." *Id.* at 446-47 (citing *United States v. Ellis*, 470 F.3d 275, 286 (6th Cir. 2006)). A defendant bears the burden of establishing grounds for withdrawing his or her plea. *Id.* at 444.

"[T]he purpose of the 'any fair and just reason' standard 'is to allow a hastily entered plea made with unsure heart and confused mind to be undone.'" *Phelps*, 329 S.W.3d at 448 (quoting *United States v. Alexander*, 948 F.2d 1002, 1004 (6th Cir. 1991)).

15

This standard reflects that "[b]efore sentencing, the inconvenience to court and prosecution resulting from a change of plea is ordinarily slight as compared with the public interest in protecting the right of the accused to trial by jury." *Crowe*, 168 S.W.3d at 741 (quoting *Kadwell v. United States*, 315 F.2d 667, 670 (9th Cir. 1963)). Thus, where the balance of the factors weighs in the defendant's favor, the trial court should permit a defendant to withdraw a plea "even if the defendant's reasons could be characterized as a 'change of heart.'" *Phelps*, 329 S.W.3d at 448. "[T]he trial judge should always exercise his discretion with caution in refusing to set aside a plea of guilty, to the end that one accused of crime may have a fair and impartial trial." *Id.* at 443 (quoting *Henning v. State*, 201 S.W.2d 669, 671 (Tenn. 1947)). However, "a defendant should not be allowed to pervert this process into a tactical tool for purposes of delay or other improper purpose." *Id.* at 448.

In this case, the trial court engaged in the relevant analysis, applied and weighed the *Phelps* factors to the evidence presented and determined that the Defendant should not be allowed to withdraw his plea. Our review reveals no abuse of discretion by the trial court.

The trial court found that the first *Phelps* factor—the amount of time that elapsed between the plea and the motion to withdraw it— weighed heavily against granting the motion because the elapsed period was eight months, which qualified as an "extensive" delay in filing. The Defendant does not dispute that this factor clearly weighed against the Defendant, and we agree with the trial court.

The trial court determined that the second factor, the presence or absence of a valid reason for the delay in filing the motion, weighed "slightly" against the Defendant. The trial court stated that proof as to this factor was "convoluted" because the Defendant testified that he asked his attorney to file the motion to withdraw a month after he entered his plea. The evidence did not clearly account for what happened in the period from the entry of the plea until the motion was filed, and the trial court noted that it was the Defendant's burden to prove he had attempted to withdraw his plea sooner. The Defendant testified that he had no way to contact his attorney, but the trial court noted the Defendant's testimony that he had access to a telephone while incarcerated and made more than a dozen calls. The trial court found that the Defendant had some credibility issues with his testimony about why he was unable to contact his attorney. The Defendant did not overcome his burden of providing a valid reason for the delay and we cannot say that the trial court abused its discretion by weighing this factor against the Defendant.

The third factor addresses the Defendant's assertion or maintaining of innocence. The trial court determined that the factor weighed "very much against" the Defendant, finding that the Defendant did not once affirmatively state that he was innocent of the crimes. On appeal, the Defendant does not contest the trial court's conclusion, and given

16

the nature of the offenses, we cannot say that the trial court abused its discretion by weighing this factor heavily against the Defendant.

The fourth and fifth factors address the circumstances underlying the guilty plea and the Defendant's nature and background. The trial court counted the fourth factor relative to the circumstances of the plea against the Defendant, noting that the Defendant had prior experience with the judicial system and spoke knowledgeably about the proceedings. The trial court noted the numerous attorneys who had worked on the Defendant's case but stated that the Defendant had provided no evidence that he was ineffectively advised by the attorney who represented him at the guilty plea submission hearing. The trial court recalled that the Defendant had an individual plea submission hearing and had been questioned extensively about his rights, the charges, and his decisions to plead guilty. At the motion hearing, the Defendant testified that he had entered his plea voluntarily. The record reveals that the trial court carefully reviewed the rights that the Defendant was waiving and confirms that the Defendant responded appropriately to questions. The Defendant said that he was not under the influence of any substance at the plea hearing, and there is no evidence that the Defendant was under the influence of alcohol or drugs when he pleaded guilty. The Defendant denied he was pressured to plead or offered anything in exchange for his plea. Furthermore, the Defendant stated that he was satisfied with trial counsel's representation. As for the Defendant's nature and background, the trial court considered and noted the Defendant's difficult past in foster care and in the hands of abusive caregivers. The trial court gave no weight to factor five and we agree with the trial court.

The sixth factor addresses the degree of experience the Defendant has with the court system. The trial court indicated that the Defendant's long history with the criminal justice system, including multiple previous guilty pleas to misdemeanors, weighed against setting aside the plea. We agree with the trial court and the State that the Defendant was aware of the plea process and the consequences of entering a guilty plea because he had done so before, although the prior convictions were for misdemeanors.

We conclude that the trial court properly considered the *Phelps* factors and found that the Defendant did not provide sufficient justification of a fair and just reason for the withdrawal of his plea. The seventh factor is neutral. We agree with the trial court that the balance of the factors did not weigh in favor of the Defendant. The trial court did not abuse its discretion by denying the Defendant's request to withdraw his guilty plea, and he is not entitled to relief.

## B. Sentencing

The Defendant next contends that the trial court erred when it sentenced him because his sentence is excessive and because he did not have prior knowledge that the

State was seeking an enhanced sentence greater than the minimum sentence or of his sentencing range. The State responds that the trial court properly imposed a within-range sentence. We agree with the State.

"Sentences imposed by the trial court within the appropriate statutory range are to be reviewed under an abuse of discretion standard with a presumption of reasonableness." *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012). A finding of abuse of discretion "'reflects that the trial court's logic and reasoning was improper when viewed in light of the factual circumstances and relevant legal principles involved in a particular case.'" *State v. Shaffer*, 45 S.W.3d 553, 555 (Tenn. 2001) (quoting *State v. Moore*, 6 S.W.3d 235, 242 (Tenn. 1999)). To find an abuse of discretion, the record must be void of any substantial evidence that would support the trial court's decision. *Id.* at 554-55; *State v. Grear*, 568 S.W.2d 285, 286 (Tenn. 1978); *State v. Delp*, 614 S.W.2d 395, 398 (Tenn. Crim. App. 1980). The reviewing court should uphold the sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Bise*, 380 S.W.3d at 709-10. So long as the trial court sentences within the appropriate range and properly applies the purposes and principles of the Sentencing Act, its decision will be granted a presumption of reasonableness. *Id.* at 707.

The misapplication of an enhancement or mitigating factor does not remove the presumption of reasonableness from a trial court's sentencing decision. *Id.* A reviewing court should not invalidate a sentence on this basis unless the trial court wholly departed from the principles of the Sentencing Act. *Id.* So long as there are other reasons consistent with the purpose and principles of sentencing, a sentence within the appropriate range should be upheld. *Id.*

In determining the proper sentence, the trial court must consider: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on the mitigating and enhancement factors set out in Tennessee Code Annotated sections 40-35-113 and -114; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement the defendant made in the defendant's own behalf about sentencing; and (8) the result of the validated risk and needs assessment conducted by the department and contained in the presentence report. See T.C.A. § 40-35-210 (2019); *State v. Taylor*, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The trial court must also consider the potential or lack of potential for rehabilitation or treatment of the defendant in determining the sentence alternative or length of a term to be imposed. T.C.A. § 40-35-103 (2019).

18

We conclude that the trial court properly sentenced the Defendant. The trial court carefully considered the relevant principles and sentenced the Defendant to a within-range sentence for each of his crimes. The trial court noted that the sentencing range was determined "by agreement" or as mandated by statute indicating that the Defendant had proper notice of his sentencing range. The trial court stated the Defendant was a Range I offender but classified, based on statute, as a Range II offender for the rape and rape of a child convictions. The trial court applied enhancement factor (1), that the Defendant had a prior history of criminal convictions or behavior, based on his misdemeanor convictions and pattern of long-term sexual abuse of the victim. T.C.A. § 40-35-114(1) (2019). The trial court applied enhancement factor (7), that the offense was committed to gratify the Defendant's desire for pleasure or excitement. The trial court found the evidence about the sexual encounters "disturbing" based on the graphic nature of the sexual acts. T.C.A. § 40-35-114(7). The individual sentence enhancement factors and the consecutive sentencing factors were included in the State's written notice filed well in advance of the sentencing hearing. All of these factors were supported by the evidence presented at trial and contained in the presentence report. As such, the appropriate application of enhancement factors supports the trial court's sentencing decision to impose a within-range sentence. The Defendant is not entitled to relief on this issue.

### III. Conclusion

Based on the foregoing analysis and conclusions, we affirm the trial court's judgments.

_____
ROBERT W. WEDEMEYER, JUDGE

19